**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| Mikle Antony Butler, | |
| Plaintiff, | |
| v. | Case No.: 3:23-cv-50125 |
| United States of America, Officer Bungard; Officer Terry; Officer Weltered; Officer Corjeaux; Officer Fulton; Officer Schaffer; Officer Dix; Officer Benitez; Nurse Garcia; Nurse Bungard; Nurse Miller; Nurse Hoist; Nurse Sweeny; Nurse Troutman; and Nurse Jane Doe | |
| Defendant. | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, Mikle A. Butler, Inmate #-32419-171 ("Plaintiff") by his undersigned counsel, makes the following Complaint against Defendant, United States of America, Officer Bungard; Officer Terry; Officer Weltered; Officer Corjeaux; Officer Fulton; Officer Schaffer; Officer Dix; Officer Benitez; Nurse Garcia; Nurse Bungard; Nurse Miller; Nurse Hoist; Nurse Sweeny; Nurse Troutman; and Nurse Jane Doe, (together, the "Defendants"), alleging as follows:

### I.     NATURE OF THE ACTION

1.      This action arises out of Defendants' treatment, or lack thereof, of Plaintiff Mikle A. Butler during the COVID-19 pandemic. Mr. Butler contracted the virus on two separate occasions while under the care and control of the USP Thomson facility, staff, and medical personnel from 2021 until February 2023.

2.      In or around 2022, within the timeframe as required by the Federal Tort Claims Act, Plaintiff submitted a Form 95 Administrative Claim to the United States. The Plaintiff now

brings this action against Defendants to recover damages for injuries he suffered as a result of the Defendants' negligent, willful, or otherwise wrongful conduct, and their intentional infliction of emotional distress in connection with the care, treatment, and medical treatment of Plaintiff, as well as for assaults by USP Thomson staff who denied Plaintiff adequate living conditions, including food, water, and medical care, while in restraints in 2022.

## II.     PARTIES

3.     Plaintiff is and, at all times relevant to this action, was an inmate under the control and custody of the United States of America, with his confinement at all relevant times being at USP Thomson, in Thomson, Illinois. He is currently confined at USP Coleman I in Sumterville, Florida.

4.     At all relevant times, Defendant United States of America is the sovereign nation responsible for lawful enforcement of laws and Bureau of Prisons policy, and had control and custody of all inmates of USP Thomson, and was legally responsible for the operation of USP Thomson and for the welfare of all the inmates of that prison. United States Penitentiary, Thomson, formerly Thomson Correctional Center, is located at 1100 1 Mile Road, Thomson, Illinois, 61285.

5.     On information and belief, Defendant Officer Bungard is a correctional officer of USP Thomson who, at all times mentioned in this complaint, held the rank of prison guard, was assigned to USP Thomson, and was acting within the scope of their office or employment.

6.     On information and belief, Defendant Officer Terry is a correctional officer of USP Thomson who, at all times mentioned in this complaint, held the rank of prison guard, was assigned to USP Thomson, and was acting within the scope of their office or employment.

2

7.      On information and belief, Defendant Officer Weltered is a correctional officer of USP Thomson who, at all times mentioned in this complaint, held the rank of prison guard, was assigned to USP Thomson, and was acting within the scope of their office or employment.

8.      On information and belief, Defendant Officer Corjeaux is a correctional officer of USP Thomson who, at all times mentioned in this complaint, held the rank of prison guard, was assigned to USP Thomson, and was acting within the scope of their office or employment.

9.      On information and belief, Defendant Officer Fulton is a correctional officer of USP Thomson who, at all times mentioned in this complaint, held the rank of prison guard, was assigned to USP Thomson, and was acting within the scope of their office or employment.

10.     On information and belief, Defendant Officer Schaffer is a correctional officer of USP Thomson who, at all times mentioned in this complaint, held the rank of prison guard, was assigned to USP Thomson, and was acting within the scope of their office or employment.

11.     On information and belief, Defendant Officer Dix is a correctional officer of USP Thomson who, at all times mentioned in this complaint, held the rank of prison guard, was assigned to USP Thomson, and was acting within the scope of their office or employment.

12.     On information and belief, Defendant Officer Benitez is a correctional officer of USP Thomson who, at all times mentioned in this complaint, held the rank of prison guard, was assigned to USP Thomson, and was acting within the scope of their office or employment.

13.     On information and belief, Defendant Nurse Bungard is medical staff of USP Thomson who, at all times mentioned in this complaint, held the position of prison nurse, was assigned to USP Thomson, and was acting within the scope of their office or employment.

3

14. On information and belief, Defendant Nurse Garcia is medical staff of USP Thomson who, at all times mentioned in this complaint, held the position of prison nurse, was assigned to USP Thomson, and was acting within the scope of their office or employment.

15. On information and belief, Defendant Nurse Miller is medical staff of USP Thomson who, at all times mentioned in this complaint, held the position of prison nurse, was assigned to USP Thomson, and was acting within the scope of their office or employment.

16. On information and belief, Defendant Nurse Hoist is medical staff of USP Thomson who, at all times mentioned in this complaint, held the position of prison nurse, was assigned to USP Thomson, and was acting within the scope of their office or employment.

17. On information and belief, Defendant Nurse Sweeny is medical staff of USP Thomson who, at all times mentioned in this complaint, held the position of prison nurse, was assigned to USP Thomson, and was acting within the scope of their office or employment.

18. On information and belief, Defendant Nurse Troutman is medical staff of USP Thomson who, at all times mentioned in this complaint, held the position of prison nurse, was assigned to USP Thomson, and was acting within the scope of their office or employment.

19. On information and belief, Defendant Nurse Jane Doe is medical staff of USP Thomson who, at all times mentioned in this complaint, held the position of prison nurse, was assigned to USP Thomson, and was acting within the scope of their office or employment.

20. Each defendant is sued individually and in their official capacity. At all times mentioned in this complaint, each defendant acted under the color of state law.

4

### III.    JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the Constitution and laws of the United States. This Court has jurisdiction to grant relief in this action pursuant to 28 U.S.C. § 1346(b) because Plaintiff brings claims under the Federal Tort Claims Act. The acts complained of within occurred at USP Thomson, formerly Thomson Correctional Center, located at 1100 1 Mile Rd, Thomson, Illinois, 61285.

22.    The Northern District of Illinois is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred. At the time of the acts complained within, Plaintiff was held at USP Thomson, 1100 1 Mile Rd, Thomson, Illinois, 61285. Plaintiff is now in the custody of USP Coleman I, 846 NE 54th Terrace, Sumterville, Florida, 33521.

23.    Upon information and belief, by its refusal to respond to repeated inquiries and in absence of a rendered conclusion within the timeframe provided, the North Central Regional Office of Kansas City denied Plaintiff's administrative claim.

### IV.    FACTS RELEVANT TO ALL ISSUES
#### a.  *BOP COVID-19 Operations*

24.    At all times relevant to this case, Plaintiff was an inmate incarcerated at United States Penitentiary, Thomson, formerly Thomson Correctional Center, located at 1100 1 Mile Rd, Thomson, Illinois, 61285.

25.    On information and belief, at all times relevant to this case, the Federal Bureau of Prisons ("BOP"), a component within the Department of Justice ("DOJ"), was responsible for the custody and care of all inmates in BOP-managed facilities.

26.     On information and belief, in March of 2020, the BOP published an overview of the BOP modified operations response to the COVID-19 pandemic (see Exhibit A, the "March 2020 Operations Memo").[1]

27.     On information and belief, in pertinent part, the March 2020 Operations Memo provided guidance and requirements to BOP facilities regarding infection prevention and control measures, and medical isolation and quarantine.

28.     On information and belief, in pertinent part, the March 2020 Operations Memo specifically required BOP facilities:

a) Screen all newly arriving BOP inmates for COVID-19 exposure risk factors and symptoms;

b) Quarantine asymptomatic inmates with exposure risk factors;

c) Isolate symptomatic inmates with exposure risk factors and test for COVID-19 per local health authority protocols.

29.     On information and belief, in March, 2020, the BOP issued a memo outlining the BOP's modified COVID-19 operations response (see Exhibit B, the "March 2020 Modified Operations Memo").[2]

30.     On information and belief, this modified operations plan required all Federal penitentiaries to, in part:

d) Suspend social visits;

e) Quarantine for 14 days all inmates being released to community custody;

---

[1] See March 2020 Operations Memo, attached hereto as Exhibit A, depicting *BOP Implementing Modified Operations*, BOP (last accessed Nov. 30, 2023)
https://web.archive.org/web/20200317060833/https://www.bop.gov/coronavirus/covid19_status.jsp.
[2] See March 2020 Modified Operations Memo, attached hereto as Exhibit A, depicting *COVID-19 Modified Operations Plan & Matrix*, BOP (last accessed Nov. 30, 2023)
https://web.archive.org/web/20200614195620/https://www.bop.gov/coronavirus/covid19_status.jsp.

f) Screen approved volunteers using the same procedures as staff prior to entry;

g) Process all newly-arriving BOP inmates through quarantine or jail/detention sites and screened for COVID-19 exposure risk factors and symptoms;

h) Quarantine asymptomatic inmates with exposure risk factors;

i) Isolate symptomatic inmates with exposure risk factors and test for COVID-19 per local health authority protocols.

31. On information and belief, in or around August of 2020, the BOP issued a modified COVID-19 operations memo (See Exhibit C, the "August 2020 Modified Operations Memo").[3]

32. On information and belief, the August 2020 Modified Operations Memo states, "[a]t a minimum, all areas, supplies, and equipment must be cleaned on a daily basis."

33. On information and belief, the August 2020 Modified Operations Memo states, "[a]ll workers (staff/contractors/inmate orderlies) must wear a surgical mask in all patient care areas, whether or not there are patients in the clinic/area."

34. On information and belief, the August 2020 Modified Operations Memo states, "[w]hen required, face coverings will be worn at all time while indoors, regardless of vaccination status."

35. On information and belief, on October 8, 2020, the BOP issued a final modification of PPE requirements in federal prisons (See Exhibit D, the "PPE Plan", PDF. p. 23-34).

---

[3] COVID-19 Modified Operations Plan & Matrix, BOP (last accessed Nov. 30, 2023)
https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp#:~:text=All%20workers%20(staff%2Fco
ntractors%2F,(Guidance%20from%20DOJ%20memo).

36. The PPE Plan states "[i]f a task requires gloves, hand hygiene should be performed prior to donning gloves—before touching the patient or the patient environment—and again immediately after removing the gloves." Exhibit D, PDF p. 28.

37. The PPE Plan states "[i]f utility belts are worn over PPE, they are removed and belt and items on belt cleaned and disinfected as appropriate." *Id*.

38. The PPE Plan states "[t]here should be an area for donning and doffing PPE at the entrance and exit from QUARANTINE and MEDICAL ISOLATION areas. It can be a designated taped area to stand in, or a makeshift anteroom created with barrier materials." *Id*.

39. The PPE Plan states a "doffing area should include: [a]n alcohol-based hand hygiene product or a sink with soap and water; [a] receptacle for reusable items (face shields or goggles)…[c]leaner/disinfectant." *Id*.

40. The PPE Plan states "[s]urgical masks should be worn by ALL OTHER STAFF when performing enhanced screenings, screening inmates coming into the institution, during R&D encounters, when escorting asymptomatic persons to quarantine, when entering the QUARANTINE environment for temperatures or care, and when less than 6 feet from inmates in QUARANTINE." *Id*. at PDF p. 31.

41. The PPE Plan states "[w]ear gloves when in direct contact with inmates, when transporting inmates, during food delivery or tray removal, upon entry to quarantine or medical isolation of COVID-19 suspected or confirmed cases—and when providing medical care of inmates, in general." *Id*. at PDF p. 34.

42. On information and belief, on October 21, 2020, the BOP issued a final modification of COVID-19 Infection Prevention and Control Measures (the "IP&C Measures"). See Exhibit D, PDF p. 13-22.

8

43.     The IP&C Measures state facilities should "[p]rovide a no-cost supply of soap to inmates, sufficient to allow frequent hand washing." *Id*. at PDF p. 14.

44.     The IP&C Measures state "[a]ll individuals participating in congregate activities should not be in quarantine or isolation status due to COVID-19." *Id*.

45.     The IP&C Measures state "[a]ll individuals participating in congregate activities should not be exhibiting any symptoms associated who carried the COVID-19 virus." *Id*.

46.     The IP&C Measures state "[a]ll participants must bring and appropriately wear institution-approved cloth face coverings as indicated in the BOP memo for Mandatory Use of Face Coverings for BOP Staff dated August 24, 2020. *Id.*

47.     The IP&C Measures state "[t]he following requirements need to be adopted when planning congregate activities: [p]erform enhanced cleaning of frequently touched surfaces between every gather" and "[s]tagger start and break times." *Id*.

48.     The IP&C Measures state "[a]ll participants must bring and appropriately wear institution-approved cloth face coverings as indicated in the BOP memo for Mandatory Use of Face Coverings for BOP Staff dated August 24, 2020." *Id*.

49.     The IP&C Measures state "[e]nsure adequate supplies to support intensified cleaning and disinfection, including PPE as indicated." *Id*. at PDF p.17.

50.     The IP&C Measures state "[i]nstitute a continuous cleaning/disinfection schedule for all high traffic/touch areas." *Id*.

51.     The IP&C Measures state "[r]outine cleaning of "HIGH-TOUCH" (frequently touched) surfaces should be increased to no less than several times per day." *Id.*

9

52. The IP&C Measures define "High-touch surfaces" to "include items such as light switches, doorknobs, door handles, desk tops, drawer handles, keys, shared pens, handrails, telephones, computer keyboards and mice, elevator buttons, cell bars, bathroom faucets, etc." *Id*.

53. The IP&C Measures state "[o]nce the cleaning process is complete, inmates equipped with PPE should spray disinfectant on all hard surface areas with chemical backpack sprayers, if available. If backpack sprayers are not available, have additional inmates with hand-held spray bottles complete this task." *Id*.

54. The IP&C Measures state "[a]ll individuals, staff and inmates, are to wear cloth face coverings to the extent practicable when social distancing cannot be maintained and within the common-area facilities and workspaces." *Id*. at PDF p. 15.

55. On information and belief, on December 21, 2020, the BOP issued a plan regarding medical isolation and quarantine (the "Isolation Plan"). See Exhibit D, PDF p. 52-65.

56. The Isolation Plan states, "the food service area must be cleaned and disinfected between groups." *Id*. at PDF p. 56.

57. The Isolation Plan states that "[s]paces where quarantined or medically isolated inmates have spent time must be cleaned and disinfected while in use and after discharge." *Id*. at PDF p. 57.

58. The Isolation Plan states that "[e]nsure that persons performing cleaning and disinfection of medical isolation or quarantine areas are wearing the recommended PPE for the product and the space being cleaned." *Id*.

### b. *USP Thomson*

59. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix,

and Officer Benitez failed to screen for COVID-19 exposure risk factors and symptoms and to adequately process all newly arriving BOP inmates through quarantine or jail/detention sites.

60. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to adequately quarantine asymptomatic inmates with exposure risk factors.

61. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to adequately isolate symptomatic inmates with exposure risk factors and test for COVID-19 per local health authority protocols.

62. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to adequately quarantine for 14 days all inmates being released to community custody;

63. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to adequately wear appropriate PPE.

64. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to clean all areas, supplies, and equipment on a daily basis.

65. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to perform adequate hand hygiene.

66.     Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to appropriately remove and clean utility belts.

67.     Upon information and belief, at all relevant times to this case, the Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to provide an area for donning and doffing PPE at the entrance and exit from Quarantine and Medical Isolation areas.

68.     Upon information and belief, at all relevant times to this case, the Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to provide adequate alcohol-based hand hygiene product or a sink with soap and water or cleaner/disinfectant in doffing areas.

69.     Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to wear surgical masks when performing enhanced screenings, screening inmates coming into the institution, during R&D encounters, when escorting asymptomatic persons to quarantine, when entering the Quarantine environment for temperatures or care, and when less than 6 feet from inmates in Quarantine.

70.     Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to wear gloves when in direct contact with inmates, when transporting inmates, during food delivery or tray removal, or upon entry to quarantine or medical isolation.

71.     Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix,

12

and Officer Benitez failed to provide a no-cost supply of soap to inmates, sufficient to allow frequent hand washing."

72. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to prevent individuals in quarantine or isolation status due to COVID-19 to join congregate activities.

73. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to prevent individuals exhibiting any symptoms associated with COVID-19 from participating in congregate activities.

74. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to bring and appropriately wear institution-approved cloth face coverings.

75. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to perform enhanced cleaning of frequently touched surfaces between every congregate activity.

76. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to stagger start and break times of every congregate activity.

77. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix,

and Officer Benitez failed to ensure adequate supplies to support intensified cleaning and disinfection, including PPE as indicated."

78. Upon information and belief, at all relevant times to this case Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to institute a continuous cleaning/disinfection schedule for all high traffic/touch areas."

79. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to routinely clean High Touch surfaces.

80. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to increase cleaning of High Touch surfaces to no less than several times per day.

81. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to adequately equip inmates with chemical backpack sprayers or hand-held spray bottles to clean High Touch surfaces.

82. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to clean and disinfect spaces quarantined or in which medically isolated inmates spent time.

83. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix,

14

and Officer Benitez failed to ensure the person performing cleaning and disinfection of medical isolation or quarantine areas were wearing the recommended PPE for the product and the space being cleaned.

84. Upon information and belief, at all relevant times to this case, the Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to adequately clean hand, belly, and leg iron restraints after previous usage.

85. Upon information and belief, at all relevant times to this case, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez failed to adequately supply inmates with cleaning supplies, including while in medical quarantine or isolation.

86. As a result, Plaintiff was exposed to and/or was fearful of being exposed to the COVID-19 virus throughout the USP Thomson facility, while exposed to USP Thomson staff, while exposed to fellow inmates, and while entering areas or utilizing surfaces and items.

87. As a result, Plaintiff was exposed to and/or was fearful of being exposed to the COVID-19 virus due to being unable to adequately clean his cell or person.

### c. 2021 COVID-19 Illness

88. In or around 2021, Plaintiff lost his sense of taste and sense of smell.

89. In or around 2021, Plaintiff began to experience pain and discomfort throughout his body, dizziness, and coughing.

90. Plaintiff also began to experience heart palpitations and impaired respiratory functions.

15

91.     In or around 2021, Plaintiff submitted hand-written requests complaining of these symptoms and requesting medical treatment to on-duty staff and medical personnel.

92.     In or around 2021, Plaintiff tested positive for COVID-19.

93.     This same day, in or around 2021, Plaintiff was placed in isolated quarantine.

94.     Officer Fulton and Officer Corjeaux conducted rounds within the isolated quarantine unit while Plaintiff was confined in quarantine conditions.

95.     While in isolated quarantine, Officer Corjeaux threatened Plaintiff with physical violence and verbal threats of violence.

96.     While in isolated quarantine, Plaintiff received treatment from USP Thomson Medical Staff, Nurse Garcia; Nurse Bungard; Nurse Miller; Nurse Hoist; Nurse Sweeny; Nurse Troutman, and Nurse Jane Doe (together "the Medical Staff").

97.     On information and belief, at all relevant times of this complaint, Nurse Troutman was not properly licensed to provide medical services.

98.     The Medical Staff provided Plaintiff with Tylonol medication during quarantine.

99.     Plaintiff complained of his pain and discomfort to the Medical Staff each day of his quarantine, but received no medication beyond Tylonol.

100.    In or around 2021, Plaintiff was discharged from isolated quarantine.

101.    Following Plaintiff's discharge from isolated quarantine, Plaintiff drafted a sensitive BP10 complaint directly to the Regional Director, submitting the form via a staff member to be placed in a US mailbox, regarding the threats of physical violence from Officer Corjeaux.

102.    Following Plaintiff's discharge from isolated quarantine, Plaintiff drafted a grievance letter to the Office of Inspector General submitting the form via a staff member to be placed in a US mailbox, regarding the threats of physical violence from Officer Corjeaux.

103. Following Plaintiff's discharge from isolated quarantine, Plaintiff drafted a grievance letter to Senator Tammy Duckworth, submitting the form via a staff member to be placed in a US mailbox, regarding the threats of physical violence from Officer Corjeaux.

104. On information and belief, Plaintiff's BP10 complaint, grievance letter to the Office of Inspector General, and grievance letter to Senator Tammy Duckworth were not mailed or filed, and were otherwise deliberately withheld.

### d. *2022 COVID-19 Illness*

105. In or around 2022, Plaintiff once again began to experience pain throughout his body, coughing, headaches, dizziness, nausea, insomnia, and migraines.

106. Plaintiff also began to experience heart palpitations and impaired respiratory functions.

107. In or around 2022, Plaintiff tested positive for COVID-19.

108. In or around 2022, Plaintiff was placed in isolated quarantine.

109. While in isolated quarantine, Plaintiff received treatment from Medical Staff.

110. Officer Fulton and Officer Corjeaux conducted rounds within the isolated quarantine unit while Plaintiff was confined in quarantine conditions.

111. In or around 2022, Medical Staff began to provide Plaintiff with daily Tylonol medication.

112. On information and belief, at all relevant times of this complaint, Nurse Troutman was not properly licensed to provide medical services.

113. Plaintiff complained of his pain and discomfort to Medical Staff each day of his quarantine, but received no additional medical treatment.

114. In or around 2022, Plaintiff was discharged from isolated quarantine.

17

115. Plaintiff continues to suffer from bodily pain, headaches, dizziness, nausea, insomnia, and migraines.

116. Plaintiff has not fully regained his sense of smell or taste.

117. As a result of Defendant's acts and/or omissions, Plaintiff has suffered bodily harm and injury, suffered extreme pain and suffering, and extreme and lasting emotional distress.

### e. Assaults by USP Thomas Officers

118. Upon discharge, Plaintiff was placed in restraints by Officer Fulton and Officer Terry.

119. Officer Fulton and Officer Terry escorted Plaintiff from his quarantine cell to the sally port transfer area within the quarantine unit.

120. At this time, officers, USP Thomson staff and inmates were utilizing the transfer areas.

121. Officer Benitez intercepted Plaintiff and Officer Fulton and Officer Terry within sally port transfer area within the quarantine unit.

122. Officer Benitez then indicated that Officer Fulton and Officer Terry should pass responsibility of Plaintiff to Officer Benitez, and stated "y'all need to give him to me because I'm about to kick his ass."

123. Officer Benitez then forced Plaintiff to the ground, slamming his face into the ground and kneeing Plaintiff in his lower back.

124. Upon reasonable belief, Officers and/or USP Thomson staff, including Officer Weltered, Officer Dix, Officer Terry, Officer Schaffer, Officer Fulton, and Officer Corjeaux, responded to the commotion.

125.	Officer Corjeaux joined Officer Benitez in placing pressure on Plaintiff's back, causing pain, discomfort, swelling, broken skin, and bruising for which Plaintiff sought medical treatment.

126.	Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez then proceeded to physically assault Plaintiff, who was in restraints, with strikes from closed fists and with kicks to Plaintiff's head, neck, chest, back, groin, and legs, forcefully pushed Plaintiff's face into the concrete ground, and struck Plaintiff's nose with a shield.

127.	Officer Bungard; Officer Terry; Officer Weltered; Officer Corjeaux; Officer Fulton; Officer Schaffer; Officer Dix, and Officer Benitez stripped Plaintiff out of his clothing in front of mixed gendered officers and in a public space.

128.	This encounter caused Plaintiff pain, discomfort, embarrassment, shame, and humiliation.

129.	Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez placed Plaintiff in paper clothing and ambulatory restraints

130.	Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton; Officer Schaffer, and Officer Dix then escorted Plaintiff from the quarantine unit to his cell in unit F-3.

131.	Upon arrival to Plaintiff's cell, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix proceeded to physically assault Plaintiff, who was in restraints, with strikes from closed fists and with kicks to Plaintiff's head, neck, chest, back, groin, and legs.

132. Upon reason and belief, Inmate Delay Boin, # 60217060, was a witness to this assault.

133. This assault caused pain, bruising, and swelling which lasted for several days.

134. Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix left Plaintiff in restraints.

135. Upon reasonable belief, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix were each on duty in unit F-3 from the three days Plaintiff was restrained in or around 2022.

136. At no point in the three days Plaintiff was restrained in or around 2022 did any officer release Plaintiff from his releases, provide food, provide medical assistance, or allow Plaintiff to relieve himself.

137. Plaintiff was forced to relieve himself and then was forced to lie in his own feces.

138. Plaintiff repeatedly requested assistance, but was denied any assistance or relief.

139. Plaintiff was denied food, water, or medical treatment following either his infirm status or the multiple assaults he had sustained.

140. Plaintiff's restraints were unreasonably tight, causing cuts, rubbing, and chaffing of his skin which he was unable to relieve.

141. Plaintiff was unable to move, reorient his body, or resituate his weight, thereby causing him sores, tenderness, and bruising from his body and skin's constant contact with the bed.

142. These unnecessary actions caused unreasonable emotional suffering, embarrassment, pain, discomfort, cuts, swelling, and bruising which lasted for several weeks and for which Plaintiff sought medical treatment.

143. Because of the acts or omissions of Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix, Plaintiff suffered from pain, discomfort, cuts, swelling, and bruising which lasted for several weeks.

144. Because of Officer Corjeaux's verbal threat to Plaintiff while Plaintiff was in quarantine in 2021, Plaintiff suffered reasonable fear and belief of bodily pain and injury from or directed via Officer Corjeaux.

145. As a result of Defendant's acts and omissions, Plaintiff has suffered bodily harm and injury, suffered extreme pain and suffering, and extreme and lasting emotional distress.

146. In or around 2022, Plaintiff filed a tort claim for personal injury against U.S.P. Thomson to the North Central Regional Office of Kansas City (the "Office") relating to contracting COVID-19, Plaintiff's related treatment, and officer and staff misconduct.

147. The Office rendered a response notification advising Plaintiff of as receipt of the tort claim and the administrative remedy number , and advised Plaintiff the Office had six months to investigate the issue.

148. Following the six-month deadline, the Office provided no further communication, despite repeated inquiries by Plaintiff and third parties.

149. Upon reason and belief, the Office has denied Plaintiff's tort claim.

## LEGAL CLAIMS

### COUNT I
*Negligence Resulting in Personal Injury*
**United States of America**

150. Plaintiff repeats and realleges the allegations in Paragraphs 1-148 above, as if fully set forth herein.

151. Defendant United States of America, via its agents or employees acting within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. *See* 28 U.S.C. §§ 1346, 2671-80.

152. Defendant United States of America owed a legal duty of care to Plaintiff as a detainee in its custody.

153. Defendant United States of America undertook and assumed a duty to protect the physical and mental well-being of all detainees, including Plaintiff.

154. Defendant United States of America further undertook and assumed a duty to protect all detainees from undue illness or injury, including Plaintiff.

155. Defendant United States of America breached the duty it owed to Plaintiff when it:

    a) negligently and/or recklessly failed to comply with the mandatory BOP policies and guidelines discussed *supra*.;

    b) negligently and/or recklessly failed to provide Plaintiff with appropriate infection prevention and control measures, and/or appropriate or adequate PPE;

    c) negligently and/or recklessly failed to observe and supervise Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, Officer Benitez, and Medical Staff;

    d) negligently and/or recklessly failed to recognize Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, Officer Benitez, and Medical Staff's conduct described herein as creating an undue risk of harm, illness, and/or injury;

e) Failed to use reasonable and due care under the circumstances; and

f) Negligence and recklessness as may be proven from facts now exclusively in the possession of Defendant United States of America, which may be ascertained after the filing of this Complaint.

156. Defendant United States of America's failure to comply with mandatory BOP policies and guidelines, to provide Plaintiff with appropriate infection prevention and control measures, PPE, or appropriate medical treatment in these circumstances, and the actions described *supra*. proximately caused Plaintiff to contract COVID-19 in 2021.

157. This illness resulted in long-lasting injuries, including bodily pain and discomfort, insomnia, headaches, and the long-lasting inability to taste or smell.

158. The United States of America is liable for the negligent acts of USP Thomson employees acting on its behalf.

159. The actions of Defendant United States of America constitute negligence under Illinois law.

160. Plaintiff is entitled to actual and compensatory damages.

161. WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

## COUNT II
### *Medical Negligence Resulting in Bodily Injury*
### United States of America

162. Plaintiff repeats and realleges the allegations in Paragraphs 1-160 above, as if fully set forth herein.

163. Defendant, via its agents or employees acting within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. See, 28 U.S.C. § 1346(b).

164. Defendant United States of America owed a legal duty of care to Plaintiff as a detainee in its custody, and owed Plaintiff a duty of care to act in the same or similar circumstances as a reasonably competent healthcare provider in the same or similar circumstances.

165. Defendant United States of America, its agents, servants, and employees thereby breached these duties of care owed to Plaintiff during his quarantine in 2021, including by the following:

   a) Improperly allowed Nurse Troutman to provide Plaintiff medical care while not properly licensed, in violation of 225 ILCS 60/3.5;

   b) Failed to provide Plaintiff appropriate medical personnel while Plaintiff was in custody, care, and control of Defendant United States of America; ;

   c) Failed to provide Plaintiff with a safe medical environment while infirm;

   d) Failed to timely and appropriately treat and manage Plaintiff's illness and symptoms;

   e) Failed to adhere to the standard of care as healthcare professionals caring for Plaintiff;

   f) Failed to employ the requisite degree of skill and care required of medical professionals including Nurse Troutman, while Plaintiff was in Defendant United States of America's care;

24

g) Negligently and/or recklessly failing to remove or suspend Nurse Troutman from active medical care and treatment immediately upon discovery of the lack of appropriate licensure;

h) Negligently and/or recklessly allowing Troutman to continue in active medical care and treatment where she had access and authority over detainees;

i) Failure to use reasonable and due care under the circumstances; and

j) Negligence and recklessness as may be proven from facts now exclusively in the possession of Defendant, which may be ascertained after the filing of this Complaint.

166. Defendant United States of America, its agents, servants, and employees' negligent conduct placed Plaintiff at undue risk of harm.

167. Defendant United States of America's negligent conduct was the proximate cause of Plaintiff's injuries, and Plaintiff suffered improperly treated pain throughout his body, coughing, headaches, dizziness, nausea, insomnia, and migraines.

168. As a direct and proximate result of the aforesaid negligence of the Defendant, its agents, servants, and employees, Plaintiff sustained serious and disabling damage to his body and nervous and cognitive system; he has in the past and will in the future incur medical, healthcare, and other expenses; he has in the past suffered and will in the future continue to suffer loss of earnings and impairment of earning capacity; he has suffered and will continue to suffer pain, suffering, mental anguish, depression, embarrassment, humiliation and disfigurement, all of which is permanent.

169. WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

**COUNT III**
*Negligence Resulting in Bodily Injury*
**United States of America**

170. Plaintiff repeats and realleges the allegations in Paragraphs 1-168 above, as if fully set forth herein.

171. Defendant United States of America, via its agents or employees acting within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. *See* 28 U.S.C. § 1346(b).

172. Defendant United States of America owed a legal duty of care to Plaintiff as a detainee in its custody.

173. Defendant United States of America undertook and assumed a duty to protect the physical and mental well-being of all detainees, including Plaintiff.

174. Defendant United States of America further undertook and assumed a duty to protect all detainees from undue illness or injury, including Plaintiff.

175. Defendant United States of America breached the duty it owed to Plaintiff when it:

    g) negligently and/or recklessly failed to comply with the mandatory BOP policies and guidelines discussed *supra*.;

    h) negligently and/or recklessly failed to provide Plaintiff with appropriate infection prevention and control measures, and/or appropriate or adequate PPE;

26

i) negligently and/or recklessly failed to observe and supervise Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, Officer Benitez, and Medical Staff;

j) Negligently and/or recklessly failed to recognize Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, Officer Benitez, and Medical Staff's conduct described herein as creating an undue risk of harm, illness, and/or injury;

k) Failure to use reasonable and due care under the circumstances; and

l) Negligence and recklessness as may be proven from facts now exclusively in the possession of Defendant, which may be ascertained after the filing of this Complaint.

176. Defendant United States of America's failure to comply with mandatory BOP policies and guidelines, to provide Plaintiff with appropriate infection prevention and control measures, PPE, or appropriate medical treatment in these circumstances, and the actions described *supra*. proximately caused Plaintiff to contract COVID-19 in 2022.

177. This illness resulted in worsening and long-lasting injuries, including bodily pain and discomfort, insomnia, headaches, and the inability to taste or smell.

178. The United States of America is liable for the negligent acts of USP Thomson employees acting on its behalf.

179. The actions of Defendant United States of America constitute negligence under Illinois law.

180. Plaintiff is entitled to actual and compensatory damages.

181.   WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

## COUNT IV
### *Medical Negligence Resulting in Bodily Injury*
### United States of America

182.   Plaintiff repeats and realleges the allegations in Paragraphs 1-180 above, as if fully set forth herein.

183.   Defendant, via its agents or employees acting within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. See, 28 U.S.C. § 1346(b).

184.   Defendant United States of America owed a legal duty of care to Plaintiff as a detainee in its custody, and owed Plaintiff a duty of care to act in the same or similar circumstances as a reasonably competent healthcare provider in the same or similar circumstances.

185.   Defendant United States of America, its agents, servants, and employees thereby breached these duties of care owed to Plaintiff during his quarantine in 2022, including by the following:

k) Improperly allowed Nurse Troutman to provide Plaintiff medical care while not properly licensed, in violation of 225 ILCS 60/3.5;

l) Failed to provide Plaintiff appropriate medical personnel while Plaintiff was in custody, care, and control of Defendant United States of America; ;

m) Failed to provide Plaintiff with a safe medical environment while infirm;

n) Failed to timely and appropriately treat and manage Plaintiff's illness and symptoms;

o) Failed to adhere to the standard of care as healthcare professionals caring for Plaintiff;

p) Failed to employ the requisite degree of skill and care required of medical professionals including Nurse Troutman, while Plaintiff was in Defendant United States of America's care;

q) Negligently and/or recklessly failing to remove or suspend Nurse Troutman from active medical care and treatment immediately upon discovery of the lack of appropriate licensure;

r) Negligently and/or recklessly allowing Troutman to continue in active medical care and treatment where she had access and authority over detainees;

s) Failure to use reasonable and due care under the circumstances; and

t) Negligence and recklessness as may be proven from facts now exclusively in the possession of Defendant, which may be ascertained after the filing of this Complaint.

186. Defendant United States of America, its agents, servants, and employees' negligent conduct placed Plaintiff at undue risk of harm.

187. Defendant United States of America's negligent conduct was the proximate cause of Plaintiff's injuries, and Plaintiff suffered improperly treated pain throughout his body, coughing, headaches, dizziness, nausea, insomnia, and migraines.

188. As a direct and proximate result of the aforesaid negligence of the Defendant, its agents, servants, and employees, Plaintiff sustained serious and disabling damage to his body and

29

nervous and cognitive system; he has in the past and will in the future incur medical, healthcare, and other expenses; he has in the past suffered and will in the future continue to suffer loss of earnings and impairment of earning capacity; he has suffered and will continue to suffer pain, suffering, mental anguish, depression, embarrassment, humiliation and disfigurement, all of which is permanent.

189.    WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

## COUNT IV
### *Negligent Retention, and Hiring as to Nurse Troutman*
**United States of America**

190.    Plaintiff repeats and realleges the allegations in Paragraphs 1-188 above, as if fully set forth herein.

191.    Defendant United States of America owed a legal duty of care to Plaintiff as a detainee in their custody.

192.    Defendant United States of America owed a legal duty of care to Plaintiff to ensure medical staff were within the authorized scope of practice and providing medically appropriate treatment.

193.    Defendant United States of America breached the duty it owed to Plaintiff when it:

    a) Hired improperly licensed medical Nurse Troutman as a medical professional, in violation of 225 ILCS 60/3.5;

    b) Failed to hire and train appropriate medical personnel;

c) Failed to ensure medical staff was appropriately trained about the signs, symptoms, and risks of COVID-19;

d) Failed to provide Plaintiff with a safe medical environment;

e) Failed to maintain institutional control over medical staff;

f) Failed to implement appropriate oversight over medical staff;

g) Failed to provide detainees, including Plaintiff, with reasonable or appropriate medical attention and care;

h) Negligence and recklessness as may be proven from facts now exclusively in the possession of Defendant, which may be ascertained after the filing of this Complaint.

194. The Defendant United States of America knew or should have known that Nurse Troutman was unfit to hold their position so as to create a danger of harm to third persons.

195. Upon information and belief, the Defendant United States of America knew or should have known that Nurse Troutman was unfit to hold their position so as to create a danger of harm to third persons.

196. Plaintiff relied upon Defendant United States of America to uphold its duties to him as a detainee.

197. Plaintiff relied upon the Defendant United States of America's employees and agents' superior knowledge and expertise, as well as its representations that it was caring for his health and safety.

198. Because the Defendant United States of America hired Nurse Troutman knowing she was unfit to hold their position so as to create a danger of harm to third persons, this particular

unfitness proximately caused Plaintiff's injuries, and Plaintiff suffered improperly treated pain throughout his body, coughing, headaches, dizziness, nausea, insomnia, and migraines.

199. Defendant United States of America's negligent conduct placed Plaintiff at undue risk of harm.

200. Defendant United States of America's negligent hiring and retention of Nurse Troutman was the proximate cause of Plaintiff's injuries, and Plaintiff suffered improperly treated pain throughout his body, coughing, headaches, dizziness, nausea, insomnia, and migraines.

201. WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

## COUNT V
### *Assault and Battery*
**Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, Officer Benitez**

202. Plaintiff repeats and realleges the allegations in Paragraphs 1-200 above, as if fully set forth herein.

203. At all relevant times herein, Defendants Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez were acting within the scope of their office or employment.

204. Defendants Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez owed a legal duty of care to Plaintiff as a detainee in its custody.

205. Defendants Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez knowingly, intentionally, and without lawful authority engaged in conduct which placed Plaintiff in reasonable apprehension of

32

receiving bodily harm and which was physical contact of an insulting or provoking nature when Defendant Officer Benitez slammed Plaintiff's body and face to the ground and when, in 2022, while in the quarantine unit, Defendants Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez struck Plaintiff with closed fists and with kicks to Plaintiff's head, neck, chest, back, groin, and legs, forcefully pushed Plaintiff's face into the concrete ground, and struck Plaintiff's nose with a shield. 720 ILCS 5/12-1 (West, 1999).

206.    Such actions created circumstances which placed a well-founded fear in Plaintiff of imminent peril, coupled with the present ability to effectuate the attempt if not prevented.

207.    These actions resulted in pain, discomfort, swelling, broken skin, and bruising for which Plaintiff sought medical treatment.

208.    The actions of Defendants Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez constitute assault and battery under Illinois law. *See* 720 ILCS 5/12-1 (West, 1999).

209.    Plaintiff is entitled to actual and compensatory damages.

210.    WHEREFORE, Plaintiff demands judgment against Defendants Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

## COUNT VI
### *Vicarious Liability: Assault and Battery*
### United States of America

211.    Plaintiff repeats and realleges the allegations in Paragraphs 1-209 above, as if fully set forth herein.

212.    Defendant United States of America, via its agents or employees acting within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. See, 28 U.S.C. § 1346(b).

213.    Defendant United States of America owed a legal duty of care to Plaintiff as a detainee in its custody.

214.    Defendant United States of America knowingly, intentionally, and without lawful authority engaged in conduct which placed Plaintiff in reasonable apprehension of receiving bodily harm and which was physical contact of an insulting or provoking nature when, in 2022, Officer Benitez slammed Plaintiff's body and face to the ground and when Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez struck Plaintiff with closed fists and with kicks to Plaintiff's head, neck, chest, back, groin, and legs, forcefully pushed Plaintiff's face into the concrete ground, and struck Plaintiff's nose with a shield. 720 ILCS 5/12-1 (West, 1999).

215.    Such actions created circumstances which placed a well-founded fear in Plaintiff of imminent peril, coupled with the present ability to effectuate the attempt if not prevented.

216.    These actions resulted in pain, discomfort, swelling, broken skin, and bruising for which Plaintiff sought medical treatment.

217.    The Defendant United States of America is liable for the acts of USP Thomson employees acting on its behalf.

218.    The actions of Defendant United States of America constitute assault and battery under Illinois law. *See* 720 ILCS 5/12-1 (West, 1999).

219.    Plaintiff is entitled to actual and compensatory damages.

220.     WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

## COUNT VII
### *Vicarious Liability: Intentional Infliction of Emotional Distress*
**United States of America**

221.     Plaintiff repeats and realleges the allegations in Paragraphs 1-219 above, as if fully set forth herein.

222.     Defendant United States of America of owed a legal duty of care to Plaintiff as a detainee in its custody.

223.     Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez acted within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. See, 28 U.S.C. § 1346(b).

224.     Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez  knowingly, intentionally, and without lawful authority engaged in extreme and outrageous conduct when they assaulted Plaintiff and stripped him naked in a public area and in front of mixed-gendered staff.

225.     Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez  intended and/or reasonably knew that assaulting Plaintiff and stripping him naked in a public area and in front of mixed-gendered staff would cause severe emotional distress.

35

226. Such conduct did cause Plaintiff severe emotion distress beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.

227. Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, and Officer Benitez knowingly, intentionally, and without lawful authority engaged in extreme and outrageous conduct when they assaulted Plaintiff while he was naked in a public area and in front of mixed-gendered staff.

228. Such conduct did cause Plaintiff severe emotion distress beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.

229. As a direct and proximate result of the actions as stated *supra*., Plaintiff has suffered and will continue to suffer economic damages including but not limited to, past medical bills; future medical bills; future psychological bills; and loss of future economic opportunity

230. As a direct and proximate result of the actions as stated *supra*., Plaintiff has suffered and will continue to suffer non-economic damages including but not limited to a deterioration of his mental status, daily mental struggles, pain, suffering, mental anguish, depression, embarrassment, humiliation; all of which is permanent.

231. The actions of Defendant United States of America constitute intentional infliction of emotional distress under Illinois law.

232. Plaintiff is entitled to actual and compensatory damages.

233. WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

## COUNT VIII
### *Assault and Battery*
**Defendants Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix;**

234.   Plaintiff repeats and realleges the allegations in Paragraphs 1-232 above, as if fully set forth herein.

235.   Defendant, via its agents or employees acting within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. See, 28 U.S.C. § 1346(b).

236.   Defendant owed a legal duty of care to Plaintiff as a detainee in its custody.

237.   Defendant knowingly, intentionally, and without lawful authority engaged in conduct which placed Plaintiff in reasonable apprehension of receiving bodily harm and which was physical contact of an insulting or provoking nature when, in 2022, Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix; proceeded to physically assault Plaintiff with strikes from closed fists and with kicks to Plaintiff's head, neck, chest, back, groin, and legs.

238.   Defendant knowingly, intentionally, and without lawful authority engaged in conduct which placed Plaintiff in reasonable apprehension of receiving bodily harm and which was physical contact of an insulting or provoking nature when Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix proceeded to physically restrain Plaintiff, without reprieve, for three (3) days.

239.   Plaintiff did suffer substantial bodily harm when:

37

a) Defendant denied Plaintiff food or water for three days following his infirm status, thereby causing dehydration, malnutrition, and increased risk of illness, infection, or death;

b) Defendant denied Plaintiff access to medical treatment following two assaults and batteries upon his person, which did cause bodily injury, and which left open wounds, thereby causing thereby causing pain and discomfort and causing an increased risk of Plaintiff to develop bed sores, infections, sepsis, and death;

c) Defendant denied Plaintiff access to toiletry facilities, thereby causing his body to discharge waste onto himself on multiple occasions;

d) Defendant ignored Plaintiff's requests for assistance, thereby requiring Plaintiff to lie in his own urine and feces, causing an increased risk of Plaintiff to develop infections and sepsis;

e) Defendant denied Plaintiff movement, the ability to adjust his body, or to remove his tightly bound restraints, thereby causing pain and discomfort to the points of his body in constant contact with the bed and restraints, and causing an increased risk of Plaintiff to develop bed sores, infections, sepsis, and death.

240. Such actions created circumstances which placed a well-founded fear in Plaintiff of imminent peril.

241. These actions resulted in ongoing pain, discomfort, swelling, broken skin, and bruising for which Plaintiff sought medical treatment.

242. Such actions resulted in more than *de minimis* injuries to Plaintiff.

243. The United States of America is liable for the acts of USP Thomson employees acting on its behalf.

244. The actions of Defendant constitute assault and battery under Illinois law.

245. Plaintiff is entitled to actual and compensatory damages.

246. WHEREFORE, Plaintiff demands judgment against Defendant in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

**COUNT IX**
*Vicarious Liability: Assault and Battery*
**United States of America**

247. Plaintiff repeats and realleges the allegations in Paragraphs 1-245 above, as if fully set forth herein.

248. Defendant United States of America, via its agents or employees acting within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. See, 28 U.S.C. § 1346(b).

249. Defendant United States of America owed a legal duty of care to Plaintiff as a detainee in its custody.

250. Defendant United States of America knowingly, intentionally, and without lawful authority engaged in conduct which placed Plaintiff in reasonable apprehension of receiving bodily harm and which was physical contact of an insulting or provoking nature when Defendant knowingly, intentionally, and without lawful authority engaged in conduct which placed Plaintiff in reasonable apprehension of receiving bodily harm and which was physical contact of an insulting or provoking nature when Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix proceeded to physically restrain Plaintiff, without reprieve, for three (3) days.

251. Plaintiff did suffer substantial bodily harm when:

f) Defendant denied Plaintiff food or water for three days following his infirm status, thereby causing dehydration, malnutrition, and increased risk of illness, infection, or death;

g) Defendant denied Plaintiff access to medical treatment following two assaults and batteries upon his person, which did cause bodily injury, and which left open wounds, thereby causing thereby causing pain and discomfort and causing an increased risk of Plaintiff to develop bed sores, infections, sepsis, and death;

h) Defendant denied Plaintiff access to toiletry facilities, thereby causing his body to discharge waste onto himself on multiple occasions;

i) Defendant ignored Plaintiff's requests for assistance, thereby requiring Plaintiff to lie in his own urine and feces, causing an increased risk of Plaintiff to develop infections and sepsis;

j) Defendant denied Plaintiff movement, the ability to adjust his body, or to remove his tightly bound restraints, thereby causing pain and discomfort to the points of his body in constant contact with the bed and restraints, and causing an increased risk of Plaintiff to develop bed sores, infections, sepsis, and death.

252. Such actions created circumstances which placed a well-founded fear in Plaintiff of imminent peril and in severe emotional distress.

253. These actions resulted in the injuries described in paragraphs 1-224, above, and ongoing pain, discomfort, swelling, broken skin, and bruising for which Plaintiff sought medical treatment.

254. The Defendant United States of America is liable for the acts of USP Thomson employees acting on its behalf.

255. The actions of Defendant United States of America constitute assault and battery under Illinois law. *See* 720 ILCS 5/12-1 (West, 1999).

256. Plaintiff is entitled to actual and compensatory damages.

257. WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

**COUNT X**
*Vicarious Liability: Intentional Infliction of Emotional Distress*
**United States of America**

258. Plaintiff repeats and realleges the allegations in Paragraphs 1-256 above, as if fully set forth herein.

259. Defendant United States of America of owed a legal duty of care to Plaintiff as a detainee in its custody.

260. Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix acted within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. See, 28 U.S.C. § 1346(b).

261. Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix did further knowingly, intentionally, and without lawful authority engaged in extreme and outrageous conduct when they once again assaulted Plaintiff and placed Plaintiff restraints for multiple days, depriving him of food, water, access to the toilet, or medical treatment following his infirm status.

262.    Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix intended and/or reasonably knew that assaulting Plaintiff, placing him in restraints, and depriving him of food, water, access to the toilet, or medical treatment for three days following his infirm status would cause severe emotional distress.

263.    Such conduct did cause Plaintiff severe emotional distress beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.

264.    As a direct and proximate result of the actions as stated *supra*., Plaintiff has suffered and will continue to suffer economic damages including but not limited to, past medical bills; future medical bills; future psychological bills; and loss of future economic opportunity.

265.    As a direct and proximate result of the actions as stated *supra*., Plaintiff has suffered and will continue to suffer non-economic damages including but not limited to a deterioration of his mental status, daily mental struggles, pain, suffering, mental anguish, depression, embarrassment, humiliation and disfigurement; all of which is permanent.

266.    The actions of Defendant United States of America constitute intentional infliction of emotional distress under Illinois law.

267.    Plaintiff is entitled to actual and compensatory damages.

268.    WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

### COUNT IX
*Vicarious Liability: Retaliation Under the First Amendment*
**United States of America**

269.    Plaintiff repeats and realleges the allegations in Paragraphs 1-267 above, as if fully set forth herein.

42

270. Plaintiff engaged in conduct protected by the First Amendment when he filed a Prison Rape Elimination Report to USP Thomson's grievance system through written communication and via an oral grievance.

271. Plaintiff further engaged in conduct protected by the First Amendment when he filed an affidavit under penalty of perjury to the warden of USP Thomson regarding Officer Corjeaux.

272. Officer Corjeaux acted within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. See, 28 U.S.C. § 1346(b).

273. Officer Corjeaux took adverse action against Plaintiff in response to the Prison Rape Elimination Report and the affidavit under penalty of perjury when he engaged in multiple assaults on Plaintiff and left Plaintiff restrained for multiple days.

274. Officer Corjeaux intended to deter First Amendment activity by Plaintiff in the future.

275. Such adverse action would reasonably deter First Amendment activity by Plaintiff in the future.

276. By threatening Plaintiff with physical violence for exercise of his right to seek redress from the prison through use of the prison grievance system, Defendant United States of America, via Officer Corjeaux, retaliated against Plaintiff unlawfully and in violation of Plaintiff's rights under the First Amendment to the United States Constitution. These illegal actions are causing Plaintiff injury to his First Amendment rights.

277. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein.

278. Officer Corjeaux acted within the scope of his office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. See, 28 U.S.C. § 1346(b).

279. The United States of America is liable for the acts of USP Thomson employees acting on its behalf.

280. The actions of Officer Corjeaux constitute retaliation in violation of the First Amendment.

281. If the United States were a private person, it would be liable to Plaintiff.

282. Plaintiff is entitled to actual and compensatory damages.

283. WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

### COUNT XII

***Eight Amendment Violations***
**Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix**

284. Plaintiff repeats and realleges the allegations in Paragraphs 1-282 above, as if fully set forth herein.

285. Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, and Officer Dix, acting under the color of federal law and within the scope of their office or employment, deprived Plaintiff of his rights under the U.S. Constitution when they directly participated in unlawfully restraining Plaintiff for three days without food, water, access to toilets, or medical treatment.

286. Defendants owed a legal duty of care to Plaintiff as a detainee in its custody.

44

287.     Defendants knowingly, purposefully, intentionally, and without lawful authority engaged in conduct which deprived Plaintiff of his right to be free from cruel and unusual punishment, and/or acted deliberate indifference to Plaintiff's deprivation of rights.

288.     Defendants acted maliciously and sadistically in restraining Plaintiff for multiple days, depriving him of food, depriving him of water, depriving him of access to a toilet, and depriving him access to medical treatment following his assaults and infirm status, as discussed *supra*.

289.     Defendants further acted maliciously and sadistically in depriving Plaintiff of his right to due process.

290.     Defendants deprived Plaintiff of at least eight consecutive meals over three days, thereby presenting a substantial risk of serious harm to Plaintiff, who was recently in infirm status and assaulted to the point of bodily injury twice by Defendants.

291.     WHEREFORE, Plaintiff demands judgment against Defendant in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

## V.     **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Mikle A. Butler, #-32419-17, is entitled to damages from the United States, and he does hereby pray that judgement be entered in his favor and against the Defendant United States of America and against Officer Bungard, Officer Terry, Officer Weltered, Officer Corjeaux, Officer Fulton, Officer Schaffer, Officer Dix, Nurse Garcia, Nurse Bungard, Nurse Miller, Nurse Hoist, Nurse Sweeny, Nurse Troutman, and Nurse Jane Doe, individually in excess of one hundred fifty thousand dollars ($150,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

Respectfully Submitted,

WALKER WILCOX MATOUSEK LLP.

/s/Evan C. Saint Cloud
Evan C. Saint Cloud
*One of the Attorneys for Plaintiff Mikle A. Butler*

WALKER WILCOX MATOUSEK LLP.
Attorneys for Plaintiff Mikle A. Butler
Christopher A. Wadley
Evan C. Saint Cloud
One North Franklin, Suite 3200
Chicago, Illinois 60606
312.244.6783
cwadley@walkerwilcox.com
esaintcloud@walkerwilcox.com