**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Mikle Antony Butler, | |
| Plaintiff, | |
| v. | Case No.: 3:23-cv-50125 |
| United States of America | |
| Defendant. | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, Mikle A. Butler, Inmate #-32419-171 ("Plaintiff"), by his undersigned counsel, makes the following Second Amended Complaint against Defendant, United States of America, ("Defendant"), alleging as follows:

### I. NATURE OF THE ACTION

1. This action arises out of Defendant's treatment, or lack thereof, of Plaintiff Mikle A. Butler during the COVID-19 pandemic, through the action or inaction of agents, employees, and/or representatives of the Federal Bureau of Prisons and United States Penitentiary, Thomson ("USP Thomson").

2. Plaintiff contracted the COVID-19 virus on two separate occasions while under the care and control of the USP Thomson facility, staff, and medical personnel from 2020 until February 2023.

3. In or around 2022, within the timeframe as required by the Federal Tort Claims Act, Plaintiff submitted an administrative claim to the United States. The Plaintiff now brings this action against Defendant to recover damages for injuries he suffered as a result of the Defendant's

negligent, willful, or otherwise wrongful conduct in connection with the failure of USP Thomson agents to adequately follow mandatory COVID-19 BOP guidelines.

## II.      PARTIES

4.      Plaintiff is and, at all times relevant to this action, was an inmate under the control and custody of the United States of America, with his confinement at all relevant times being at USP Thomson, in Thomson, Illinois. He is currently confined at USP Coleman I in Sumterville, Florida.

5.      At all relevant times, Defendant United States of America is the sovereign nation responsible for lawful enforcement of laws and Bureau of Prisons policy, and had control and custody of all inmates of USP Thomson, and was legally responsible for the operation of USP Thomson and for the welfare of all the inmates of that prison. United States Penitentiary, Thomson, formerly Thomson Correctional Center, is located at 1100 1 Mile Road, Thomson, Illinois, 61285.

## III.      JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under the laws of the United States of America and is premised on the acts and omission of the Defendant acting under color of federal law.

7.      This Court has jurisdiction to grant relief in this action pursuant to 28 U.S.C. § 1346(b) where Plaintiff sues the Defendant the United States of America, for money damages, for injury caused by the negligent and wrongful acts and employees of the Government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, is a private person, would be liable to the Plaintiff.

8.      Jurisdiction founded upon federal law is proper in that this action is premised on federal causes of action under the Federal Tort Claims Act ("FTCA"), pursuant to 28 U.S.C.§ 2671, and where Plaintiff previously served the appropriate federal agency for administrative settlement under the FTCA.

9.      Pursuant to the FTCA, Plaintiff properly filed an Administrative Claim, and properly notified said Claim to the North Central Regional Office of Kansas City, on or around April 10, 2022, requesting $30,000 or more (Claim TRT-NCR-2022-04058) (the "FTCA Claim").

10.     The acts complained of within the FTCA Complaint occurred at USP Thomson, formerly Thomson Correctional Center, located at 1100 1 Mile Rd, Thomson, Illinois 61285.

11.     The North Central Regional Office rendered a response notification to Plaintiff on April 20, 2022, then ceased communication with Plaintiff.

12.     Plaintiff repeatedly sought a response from the North Central Regional Office regarding the FTCA Claim, and utilized third parties to contact the North Central Regional Office beginning in or around October of 2022.

13.     The North Central Regional Office effectively denied Plaintiff's claim through its failure to adjudicate the claim within the six-month timeframe allotted by the FTCA.

14.     The Northern District of Illinois is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred. At the time of the acts complained within, Plaintiff was held at USP Thomson, 1100 1 Mile Rd, Thomson, Illinois, 61285. Plaintiff is now in the custody of USP Coleman I, 846 NE 54th Terrace, Sumterville, Florida 33521.

15.     Upon information and belief, by its refusal to respond to repeated inquiries and in absence of a rendered conclusion within the timeframe provided, the North Central Regional Office of Kansas City denied Plaintiff's administrative claim.

## IV.     FACTS RELEVANT TO ALL ISSUES

### a.  BOP COVID-19 Operations

16.     At all times relevant to this case, Plaintiff was an inmate incarcerated at United States Penitentiary, Thomson, formerly Thomson Correctional Center, located at 1100 1 Mile Rd, Thomson, Illinois 61285.

17.     On information and belief, at all times relevant to this case, the Federal Bureau of Prisons ("BOP"), a component within the Department of Justice ("DOJ"), was responsible for the custody and care of all inmates in BOP-managed facilities.

18.     On information and belief, in March of 2020, the BOP published an overview of the BOP modified operations response to the COVID-19 pandemic (the "March 2020 Operations Memo").

19.     On information and belief, in pertinent part, the March 2020 Operations Memo provided guidance and requirements to BOP facilities regarding infection prevention and control measures, and medical isolation and quarantine.

20.     On information and belief, in pertinent part, the March 2020 Operations Memo specifically requires BOP facilities to:

a)  Screen all newly arriving BOP inmates for COVID-19 exposure risk factors and symptoms;

b)  Quarantine asymptomatic inmates with exposure risk factors;

c) Isolate symptomatic inmates with exposure risk factors and test for COVID-19 per local health authority protocols.

21. On information and belief, in March of 2020, the BOP issued a memo outlining the BOP's modified COVID-19 operations response (the "March 2020 Modified Operations Memo").

22. On information and belief, the March 2020 Modified Operations Memo requires all Federal penitentiaries to, in part:

d) Suspend social visits;

e) Quarantine for 14 days all inmates being released to community custody;

f) Screen approved volunteers using the same procedures as staff prior to entry;

g) Process all newly-arriving BOP inmates through quarantine or jail/detention sites; and screen for COVID-19 exposure risk factors and symptoms;

h) Quarantine asymptomatic inmates with exposure risk factors;

i) Isolate symptomatic inmates with exposure risk factors and test for COVID-19 per local health authority protocols.

23. On information and belief, in or around August of 2020, the BOP issued a modified COVID-19 operations memo (the "March 2020 Modified Operations Memo").

24. On information and belief, the August 2020 Modified Operations Memo requires, at a minimum, all areas, supplies, and equipment be cleaned on a daily basis.

25. On information and belief, the August 2020 Modified Operations Memo requires all workers to wear a surgical mask in all patient care areas, whether or not there are patients present.

26. On information and belief, the August 2020 Modified Operations Memo requires face coverings be worn at all time while indoors, regardless of vaccination status.

27. On information and belief, on October 8, 2020, the BOP issued a final modification of PPE requirements in federal prisons.

28. The PPE Plan requires hand hygiene performed prior to donning gloves—before touching the patient or the patient environment—and again immediately after removing the gloves.

29. The PPE Plan requires utility belts worn over PPE be removed and the utility belt and items on the belt be cleaned and disinfected.

30. The PPE Plan requires an area for donning and doffing PPE at the entrance and exit from quarantine and medical isolation areas.

31. The PPE Plan requires a doffing area to include alcohol-based hand hygiene product or a sink with soap and water, a receptacle for reusable items, and cleaner/disinfectant.

32. The PPE Plan requires surgical masks be worn by all staff when performing enhanced screenings, screening inmates coming into the institution, during R&D encounters, when escorting asymptomatic persons to quarantine, when entering the quarantine environment for temperatures or care, and when less than 6 feet from inmates in quarantine.

33. The PPE Plan requires gloves be worn when staff is in direct contact with inmates, when transporting inmates, during food delivery or tray removal, upon entry to quarantine or medical isolation of COVID-19 suspected or confirmed cases, and when providing medical care of inmates, in general.

34. On information and belief, on October 21, 2020, the BOP issued a final modification of COVID-19 Infection Prevention and Control Measures (the "IP&C Measures").

35.     The IP&C Measures require facilities to provide a no-cost supply of soap to inmates, sufficient to allow frequent hand washing.

36.     The IP&C Measures require all individuals participating in congregate activities should not be in quarantine or isolation status due to COVID-19.

37.     The IP&C Measures require all individuals participating in congregate activities should not be exhibiting any symptoms associated with the COVID-19 virus.

38.     The IP&C Measures require all participants to bring and appropriately wear institution-approved cloth face coverings as indicated in the BOP memo for Mandatory Use of Face Coverings for BOP Staff dated August 24, 2020.

39.     The IP&C Measures require enhanced cleaning of frequently touched surfaces between every planned congregate activity and staggered start and break times when planning congregate activities.

40.     The IP&C Measures require all participants to bring and appropriately wear institution-approved cloth face coverings as indicated in the BOP memo for Mandatory Use of Face Coverings for BOP Staff dated August 24, 2020.

41.     The IP&C Measures require adequate supplies to support intensified cleaning and disinfection, including PPE as indicated.

42.     The IP&C Measures require a continuous cleaning/disinfection schedule for all high traffic/touch areas.

43.     The IP&C Measures require routine cleaning, several times per day, of "high-touch surfaces" or frequently touched surfaces, including items such as light switches, doorknobs, door handles, desktops, drawer handles, keys, shared pens, handrails, telephones, computer keyboards and mice, elevator buttons, cell bars, and bathroom faucets.

44.     The IP&C Measures require inmates to be equipped with PPE and directed to spray disinfectant on all hard surface areas with chemical backpack sprayers or hand-held spray bottles.

45.     The IP&C Measures require all individuals, staff and inmates, to wear cloth face coverings to the extent practicable when social distancing cannot be maintained and within the common-area facilities and workspaces.

46.     On information and belief, on December 21, 2020, the BOP issued a plan regarding medical isolation and quarantine (the "Isolation Plan").

47.     The Isolation Plan requires the food service area be cleaned and disinfected between groups.

48.     The Isolation Plan requires spaces where quarantined or medically isolated inmates have spent time be cleaned and disinfected while in use and after discharge.

49.     The Isolation Plan requires BOP facilities to ensure that persons performing cleaning and disinfection of medical isolation or quarantine areas are wearing the recommended PPE for the product and the space being cleaned.

50.     At all relevant times to this case, USP Thomson was required to enact a minimum fourteen (14)-day quarantine of inmates upon arrival and departure.

51.     At all relevant times to this case, USP Thomson was required to release only inmates from quarantine who produced two (2) negative COVID-19 tests.

### b.   *USP Thomson*

52.     Upon information and belief, at all relevant times to this case, USP Thomson employed yet unknown prison officials and guards who were assigned to USP Thomson and were acting within the scope of their office or employment (the "USP Thomson Officers").

53.     Upon information and belief, at all relevant times to this case, USP Thomson employed medical staff, including V. Garcia, RN; C. Bungard, RN; K. Miller, RN; C. Horst, RN; C. Wierema, RN, K. Pope, RDH; Phillip Mullins, RN; Amanda Miller, RN; Jessic Kendrick, RN; Schwarz, M; K. Graves, RN; M. Troutman; K. Graves, RN; and other yet unknown medical providers were employed by USP Thomson and were acting withing the scope of their office or employment (together the "USP Thomson Medical Staff").

54.     Upon information and belief, at all relevant times to this case, the USP Thomson Officers and USP Thomson Medical Staff (the "USP Thomson Agents") failed to screen for COVID-19 exposure risk factors and symptoms and to adequately process all newly arriving BOP inmates through quarantine or jail/detention sites.

55.     Upon information and belief, at all relevant times to this case, the USP Thomson Agents failed to adequately quarantine for fourteen (14) days all inmates being released to community custody.

56.     Upon information and belief, at all relevant times to this case, the USP Thomson Agents failed to adequately quarantine asymptomatic inmates with exposure risk factors.

57.     Upon information and belief, at all relevant times to this case, the USP Thomson Agents failed to adequately isolate symptomatic inmates with exposure risk factors and test for COVID-19 per local health authority protocols.

58.     Upon information and belief, at all relevant times to this case, the USP Thomson Agents failed to conduct two (2) negative COVID-19 tests upon all inmates prior to releasing inmates into community custody;

59.     Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to adequately wear appropriate PPE.

60. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to clean all areas, supplies, and equipment on a daily basis.

61. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to perform adequate hand hygiene.

62. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to appropriately remove and clean utility belts.

63. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to provide an area for donning and doffing PPE at the entrance and exit from Quarantine and Medical Isolation areas.

64. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to provide adequate alcohol-based hand hygiene product or a sink with soap and water or cleaner/disinfectant in doffing areas.

65. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to wear surgical masks when performing enhanced screenings, screening inmates coming into the institution, during R&D encounters, when escorting asymptomatic persons to quarantine, when entering the Quarantine environment for temperatures or care, and when less than 6 feet from inmates in Quarantine.

66. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to wear gloves when in direct contact with inmates, when transporting inmates, during food delivery or tray removal, or upon entry to quarantine or medical isolation.

67. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to provide a no-cost supply of soap to inmates, sufficient to allow frequent hand washing.

10

68. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to prevent individuals in quarantine or isolation status due to COVID-19 to join congregate activities.

69. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to prevent individuals exhibiting any symptoms associated with COVID-19 from participating in congregate activities.

70. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to bring and appropriately wear institution-approved cloth face coverings.

71. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to perform enhanced cleaning of frequently touched surfaces between every congregate activity.

72. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to stagger start and break times of every congregate activity.

73. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to ensure adequate supplies to support intensified cleaning and disinfection, including PPE.

74. Upon information and belief, at all relevant times to this case the USP Thomson Officers failed to institute a continuous cleaning/disinfection schedule for all high traffic/touch areas.

75. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to routinely clean high-touch surfaces.

76. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to increase cleaning of high-touch surfaces to no less than several times per day.

77. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to adequately equip inmates with chemical backpack sprayers or hand-held spray bottles to clean high-touch surfaces.

78. Upon information and belief, at all relevant times to this case, The USP Thomson Officers failed to clean and disinfect spaces quarantined or in which medically isolated inmates spent time.

79. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to ensure the person performing cleaning and disinfection of medical isolation or quarantine areas were wearing the recommended PPE for the product and the space being cleaned.

80. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to adequately clean hand, belly, and leg iron restraints after previous usage.

81. Upon information and belief, at all relevant times to this case, the USP Thomson Officers failed to adequately supply inmates with cleaning supplies, including while in medical quarantine or isolation.

82. As a result, Plaintiff was exposed to and/or was fearful of being exposed to the COVID-19 virus throughout the USP Thomson facility, while exposed to USP Thomson staff, while exposed to fellow inmates, and while entering areas or utilizing surfaces and items.

83. As a result, Plaintiff was exposed to and/or was fearful of being exposed to the COVID-19 virus due to being unable to adequately clean his cell or person.

### c. *2020 COVID-19 Illness*

84. In or around 2020, Plaintiff began to experience aching, pain, and discomfort throughout his body, along with dizziness and coughing.

85.     Plaintiff also began to experience heart palpitations and impaired respiratory functions.

86.     In or around December 8, 2020, Plaintiff tested positive for COVID-19.

87.     This same day, in or around December 8, 2020, Plaintiff was placed in isolated quarantine.

88.     While in isolated quarantine, Plaintiff received treatment from the USP Thomson Medical Staff.

89.     The Medical Staff provided Plaintiff with Tylenol medication during quarantine.

90.     Plaintiff complained of his ongoing pain and discomfort to the Medical Staff each day of his quarantine, but received no medication beyond Tylenol.

91.     Plaintiff drafted a grievance letter to Senator Tammy Duckworth regarding the lack of COVID-19 safety measures at USP Thomson and Plaintiff's concerns thereof.

92.     In response to Plaintiff's letter, Senator Tammy Duckworth's office contacted the Federal Bureau of Prisons.

93.     The Federal Bureau of Prisons informed Senator Duckworth's office that USP Thomson tested inmates in accordance with the Centers for Disease Control and Prevention guidelines, including testing inmates who came in contact with COVID-19 positive inmates and contact tracing of COVID-19 positive staff.

94.     In or around December 22, 2020, Plaintiff was discharged from isolated quarantine.

95.     Plaintiff was discharged from quarantine without the USP Thomson Medical Staff conducting two negative COVID-19 tests prior to his release to his unit.

### d. 2022 COVID-19 Illness

96. In or around January of 2022 Plaintiff once again began to experience fatigue and pain throughout his body, coughing, headaches, dizziness, nausea, insomnia, and migraines.

97. Plaintiff also began to experience pain in his chest.

98. In or around January 10, 2022, Plaintiff tested positive for COVID-19.

99. That same day, in or around January 10, 2022, Plaintiff was placed in isolated quarantine.

100. While in isolated quarantine, Plaintiff received treatment from Medical Staff.

101. In or around January 10, 2022, Medical Staff began to provide Plaintiff with daily Tylenol medication.

102. Plaintiff complained of his ongoing pain and discomfort to Medical Staff each day of his quarantine, but received no additional medical treatment.

103. In or around January 20, 2022, Plaintiff was discharged from isolated quarantine.

104. Plaintiff was discharged from quarantine without the USP Thomson Medical Staff conducting two negative COVID-19 tests prior to his release to his unit.

105. Plaintiff continues to suffer from bodily pain, headaches, dizziness, nausea, insomnia, and migraines.

106. Plaintiff has not fully regained his sense of smell or taste.

107. As a result of Defendant's acts and/or omissions, Plaintiff has suffered bodily harm and injury, suffered extreme and ongoing pain and suffering.

108. In or around April 10, 2022, Plaintiff filed a tort claim for personal injury against U.S.P. Thomson to the North Central Regional Office of Kansas City (the "Office") relating to

14

contracting COVID-19, Plaintiff's related treatment, and officer and staff misconduct (the "2022 Tort Claim").

109.    Plaintiff properly noticed the 2022 Tort Claim to the Office.

110.    The Office rendered a response notification advising Plaintiff of as receipt of 2022 Tort Claim, the administrative remedy number, and that the Office had six months to investigate the issue.

111.    Following the six-month deadline, the Office provided no further communication.

112.    Plaintiff repeatedly attempted to contact the Office to obtain a status of the 2022 Tort Claim through his own personal efforts and, due to his incarceration, that of third parties on his behalf.

113.    Plaintiff did not receive any further information or communication from the Office regarding the 2022 Tort Claim.

114.    Upon reason and belief, the Office has denied Plaintiff's tort claim.

## LEGAL CLAIMS

### COUNT I
*Federal Tort Claims Act (FTCA): Negligence Resulting in Personal Injury*
**United States of America**

115.    Plaintiff repeats and realleges the allegations in Paragraphs 1-114 above, as if fully set forth herein.

116.    The Federal Bureau of Prisons is a United States federal law enforcement agency within the U.S. Department of Justice that operates U.S. federal prisons and is responsible for the care, custody and control of federal prisoners.

117.    Defendant United States of America, via its agents or employees acting within the scope of their office or employment under circumstances where the Defendant United States of

15

America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. *See* 28 U.S.C. §§ 1346, 2671-80.

118.    The Defendant owed a legal duty of care to Plaintiff as a detainee in its custody. The Defendant stood in such a relationship with Plaintiff that the law imposed on the Defendant an obligation of reasonable conduct for the benefit of the Plaintiff, including protecting his health and safety and to comply with mandatory guidelines and provisions enacted for safety, medical care and treatment.

119.    Defendant United States of America undertook and assumed a duty to protect the physical and mental well-being of all detainees, including Plaintiff.

120.    Defendant United States of America further undertook and assumed a duty to protect all detainees from undue illness or injury, including Plaintiff.

121.    Specifically, and consistent with its own policies and regulations, Defendant United States had a duty to ensure that its employees, staff, or other agents complied with COVID-19 regulations.

122.    As set out in detail above, the Defendant United States of America breached the duty it owed to Plaintiff when it:

 a) Negligently and/or recklessly failed to provide Plaintiff with appropriate infection prevention and control measures, and/or appropriate or adequate PPE;

 b) Negligently and/or recklessly failed to recognize USP Thomson Officers and USP Medical Staff conduct described herein as creating an undue risk of harm, illness, and/or injury;

 c) Failed to use reasonable and due care under the circumstances;

16

d) Otherwise negligently and/or recklessly failed to comply with the mandatory BOP policies and guidelines discussed *supra*.; and

e) Negligence and recklessness as may be proven from facts now exclusively in the possession of Defendant United States of America, which may be ascertained after the filing of this Complaint.

123. Defendant United States of America's failure to comply with mandatory BOP policies and guidelines, to provide Plaintiff with appropriate infection prevention and control measures, or PPE in these circumstances, and the actions described *supra*. proximately caused Plaintiff to contract COVID-19 in 2020.

124. The breach was the direct and proximate cause of the Plaintiff's illness, which resulted in long-lasting injuries, including bodily pain and discomfort, insomnia, headaches, and the long-lasting inability to taste or smell.

125. The United States of America is liable for the negligent acts of USP Thomson employees acting on its behalf.

126. The actions of Defendant United States of America constitute negligence under Illinois law.

127. Plaintiff is entitled to actual and compensatory damages.

128. WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of thirty thousand dollars ($30,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

## COUNT II
### *FTCA: Negligence Resulting in Personal Injury*
**United States of America**

129. Plaintiff repeats and realleges the allegations in Paragraphs 1-128 above, as if fully set forth herein.

130. Defendant United States of America, via its agents or employees acting within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Illinois. *See* 28 U.S.C. § 1346(b).

131. Defendant United States of America owed a legal duty of care to Plaintiff as a detainee in its custody.

132. Defendant United States of America undertook and assumed a duty to protect the physical and mental well-being of all detainees, including Plaintiff.

133. Defendant United States of America further undertook and assumed a duty to protect all detainees from undue illness or injury, including Plaintiff.

134. Defendant United States of America breached the duty it owed to Plaintiff when it:

    a) Negligently and/or recklessly failed to provide Plaintiff with appropriate infection prevention and control measures, and/or appropriate or adequate PPE;

    b) Failure to use reasonable and due care under the circumstances;

    c) Otherwise negligently and/or recklessly failed to comply with the mandatory BOP policies and guidelines discussed *supra*.; and

d) Negligence and recklessness as may be proven from facts now exclusively in the possession of Defendant, which may be ascertained after the filing of this Complaint.

135. Defendant United States of America's failure to comply with mandatory BOP policies and guidelines, to provide Plaintiff with appropriate infection prevention and control measures, or PPE in these circumstances, and the actions described *supra.* proximately caused Plaintiff to contract COVID-19 in 2022.

136. This illness resulted in worsening and long-lasting injuries, including bodily pain and discomfort, insomnia, headaches, and the inability to taste or smell.

137. The United States of America is liable for the negligent acts of USP Thomson employees acting on its behalf.

138. The actions of Defendant United States of America constitute negligence under Illinois law.

139. Plaintiff is entitled to actual and compensatory damages.

140. WHEREFORE, Plaintiff demands judgment against Defendant United States of America in excess of thirty thousand dollars ($30,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Mikle A. Butler, #-32419-17, is entitled to damages from the United States, and he does hereby pray that judgement be entered in his favor and against the Defendant United States of America, individually in excess of thirty thousand dollars ($30,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

Respectfully Submitted,

WALKER WILCOX MATOUSEK LLP.

/s/Evan C. Saint Cloud

Evan C. Saint Cloud
*One of the Attorneys for Plaintiff Mikle A. Butler*

WALKER WILCOX MATOUSEK LLP.
Attorneys for Plaintiff Mikle A. Butler
Christopher A. Wadley
Evan C. Saint Cloud
One North Franklin, Suite 3200
Chicago, Illinois 60606
312.244.6783
cwadley@walkerwilcox.com
esaintcloud@walkerwilcox.com

20