**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MIKLE ANTONY BUTLER (# 32419-171),** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 23 C 50125** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Mikle Butler sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, after contracting COVID-19 twice while in federal prison. He alleges that prison officials negligently failed to take adequate health and safety measures that could have prevented his infection. Defendant has moved to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, that motion is denied.

<u>**BACKGROUND**</u>

**I.      Factual Basis for Claims**

Plaintiff's Second Amended Complaint describes his experience at United States Penitentiary, Thomson ("USP Thomson") in northwestern Illinois, where he was incarcerated at all times relevant to this case. (Second Am. Compl. [38] ("SAC") ¶¶ 4, 16.) After the COVID pandemic struck in early 2020, the Federal Bureau of Prisons published a series of guidance memoranda outlining operational steps to curb the disease's spread in its facilities. (*Id.* ¶¶ 18–51.) These included: two successive memos in March 2020 that established screening, quarantine, and isolation protocols for symptomatic prisoners and prisoners with exposure risk factors (*id.* ¶¶ 20, 22); an August 2020 memo requiring face coverings and daily cleaning of surfaces (*id.* ¶¶ 24–26); two guidance memos in October 2020 establishing further requirements for the use of personal protective equipment ("PPE") and sanitizers (*id.* ¶¶ 27–45); and a December 2020 plan outlining isolation and quarantine procedures (*id.* ¶¶ 46–49). Plaintiff further

alleges that USP Thomson was, at all relevant times, required to (1) quarantine newly arrived prisoners for a minimum of 14 days, and (2) hold prisoners in quarantine until they produced two negative COVID tests.  (*Id.* ¶¶ 50–51.)

Plaintiff claims that the officials, guards, and medical staff employed at USP Thomson consistently failed to follow the procedures set forth in this body of official guidance.  He alleges, among other things, that the prison's agents did not adequately screen and quarantine newly arrived prisoners and symptomatic prisoners, did not conduct testing in line with local health authority protocols, and did not comply with proper procedures for PPE usage and sanitization. (*Id.* ¶¶ 54–80.)  The Second Amended Complaint describes these failures in broad brushstrokes: while Plaintiff names thirteen members of the prison's medical staff (*id.* ¶ 53), he does not otherwise identify any individuals or describe any specific incidents when he himself was exposed to COVID.  Rather, he alleges that the prison's failures created a generally unsanitary and dangerous environment during the pandemic that left him and other prisoners in constant fear of exposure.  (*Id.* ¶¶ 82–83).

Plaintiff contracted COVID twice while incarcerated at USP Thomson—once in December 2020, and again in January 2022.  (*Id.* ¶¶ 86, 98.)  Both times, he was placed in isolated quarantine but given no medication other than Tylenol and was discharged without having produced two negative test results.  (*Id.* ¶¶ 87–95, 99–104.)  Plaintiff alleges that he continues to suffer from symptoms including bodily pain, headaches, dizziness, insomnia, migraines, and a partial loss of smell and taste.  (*Id.* ¶¶ 105–06.)

## II.    Procedural History

On April 10, 2022, Plaintiff filed an administrative claim for personal injuries against USP Thomson, which was directed to the Bureau's North Central Regional Office in Kansas City. (*Id.* ¶¶ 108–10.)  The Office issued a notification of receipt and assigned him the claim number TRT-NCR-2022-0458, but made no further communication despite Plaintiff's follow-up efforts. (*Id.* ¶¶ 9–12.)  While Plaintiff did not produce a copy of this filing along with his complaint, he

alleges that the Bureau effectively denied his claim by failing to respond within the six-month time frame allotted by the FTCA. *See* 28 U.S.C. § 2675(a). The United States acknowledges the existence of Plaintiff's filing and has not raised failure to exhaust administrative remedies as a defense to Plaintiff's action. (*See* Def.'s Answer [12] at 4; *see generally* Def.'s Mem. Supp. Mot. Dismiss [44].)

Plaintiff filed this suit pro se in April 2023, naming the United States as the sole defendant under the FTCA. (Compl. [1].) Defendant filed an answer with affirmative defenses a few months later, after receiving service [12]. After the court granted Plaintiff's motion for attorney representation [27], Plaintiff's new counsel filed an Amended Complaint in December 2023 [32] and a Second Amended Complaint in March 2024 [38]. Defendant has now moved to dismiss that latter complaint in its entirety [43].

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the court must determine whether the plaintiff has plausibly alleged a basis for jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). In assessing such a motion, the court "may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Id.* (citing *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the complaint must contain sufficient factual allegations, accepted as true, to state a claim to relief that is plausible on its face. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Peterson*, 986 F.3d at 751.

The court is not, however, required to accept as true a legal conclusion couched as a factual allegation. *Id.* And a plaintiff "need not plead around affirmative defenses," such as statutory immunity, "but dismissal on the basis of an affirmative defense is appropriate when the complaint sets forth everything necessary to satisfy the defense." *Dernis v. United States*, No. 21 C 3157, 2023 WL 4564591, at *7 (N.D. Ill. July 17, 2023) (citing *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014)).

## DISCUSSION

The Federal Tort Claims Act ("FTCA") provides a limited waiver of the United States' sovereign immunity, allowing individuals to bring claims for money damages against the federal government for certain torts committed by federal employees acting within the scope of their employment. 28 U.S.C. §§ 1346(b), 2671–80. To prevail on a claim under the FTCA, a plaintiff must demonstrate that a private person would be liable to the claimant under the law of the place where the act or omission occurred—here, Illinois. *Brownback v. King*, 592 U.S. 209, 212 (2021); *Parrott v. United States*, 536 F.3d 629, 635 (7th Cir. 2008). Plaintiff here asserts two counts of negligence under the FTCA, one for negligence resulting in his December 2020 COVID infection and another relating to his January 2022 infection. The theory underlying both claims is that prison staff had a duty to protect his health and safety but breached that duty by failing to comply with the Bureau's COVID procedures, proximately causing him injury in the form of his illness and subsequent complications.

Defendant's motion to dismiss makes four arguments: (1) Defendant is generally immune from suit over COVID-related activity under the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. § 247d-6d; (2) it is immunized from FTCA negligence claims by Illinois's Federal Law Enforcement Officer Immunity Act, 745 ILCS 22/10; (3) Plaintiff's theory of institutional FTCA liability is not cognizable under the circumstances of this case; and (4) the FTCA's "quarantine exception," 28 U.S.C. § 2680(f), applies. The court considers each in turn.

4

I.      **PREP Act Immunity**

The United States first argues that Plaintiff's claims should be dismissed because they are barred by the PREP Act's immunity provision, 42 U.S.C. § 247d-6d(a)(1), for actions taken during the COVID pandemic. "Congress passed the PREP Act in 2005 to encourage during times of crisis the development and deployment of medical countermeasures (such as diagnostics, treatments, and vaccines) by limiting legal liability relating to their administration." *Maney v. Brown*, 91 F.4th 1296, 1298 (9th Cir. 2024) (quoting *Hampton v. California*, 83 F.4th 754, 762 (9th Cir. 2023)). The PREP Act's immunity provisions are triggered when the Secretary of Health and Human Services declares a public health emergency and identifies appropriate countermeasures to address the emergency circumstances. 42 U.S.C. § 247d-6d(b)(1). Once such a declaration has been made, the Act immunizes "covered person[s]"—including the United States—from liability under federal and state law for "loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." *Id.* § 247d-6d(a)(1), (i)(2)(A).

The Secretary activated the Act's immunity provision at the outset of the COVID pandemic, publishing a declaration in March 2020 that defined the "[a]dministration of a covered countermeasure" to include "physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients," as well as "management and operation of countermeasure programs . . . ." *Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID–19*, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020). Initially, the declaration included as "covered countermeasures" only vaccines and other forms of medical COVID treatment and testing. *Id.* at 15,202. Then in mid-2020, the term was expanded to include other products "that limit the harm [the] pandemic . . . might otherwise cause," including respiratory PPE. *Second Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID–19*, 85 Fed. Reg. 35,100,

35,101–02 (June 8, 2020); *see also* CARES Act, Pub. L. No. 116-136, § 3103, 134 Stat. 281, 361 (2020) (amending PREP Act's definition of "covered countermeasure" to include respiratory PPE).

Defendant argues that Plaintiffs' allegations fall squarely within the PREP Act's grant of immunity because those allegations "relate to" the use of "covered countermeasures" like COVID testing, cleaning, and PPE usage. Plaintiff counters that this misstates his argument; he is seeking damages not for prison officials' improper implementation of these "countermeasures," but their failure to do so altogether.

Plaintiff has the better argument. Several courts, including this one, have interpreted the PREP Act's scope when addressing motions to remand COVID-related state tort claims removed to federal court on the basis of complete preemption. Those courts have almost uniformly agreed that remand is appropriate, as the Act "was clearly designed to protect those who employ countermeasures, not those who decline to employ them." *Mackey v. Tower Hill Rehab., LLC*, 569 F. Supp. 3d 740, 745–46 (N.D. Ill. 2021) (cleaned up) (collecting cases); *see also Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213–14 (7th Cir. 2022) (reaching the same conclusion, and rejecting the government's contention that "the Act completely preempts all claims under state law related to COVID-19"). This case involves a different procedural posture— it is properly brought in federal court under the FTCA—but the same logic applies, as Plaintiff's claim is founded on Illinois negligence law. The Act's text makes clear that the immunity it affords is limited to claims over the alleged *mis*use of "covered countermeasures," rather than "a measure's *non*-administration or *non*-use." *Hampton*, 83 F.4th at 763 (emphasis in original). In other words, "for PREP Act immunity to apply," the defendant must have actually "use[d]" a "covered countermeasure" in a way that "played some role in bringing about or contributing to the plaintiff's injury." *Id.* at 764; *see also* 42 U.S.C. § 247d-6d(a)(2)(B) (immunity applies to "any claim for loss that has a *causal relationship* with the administration to or use by an individual of a covered countermeasure") (emphasis added).

Most of Plaintiff's allegations state a viable claim for relief under this rule, at least at the pleading stage. He claims, for one, that prison officials failed to adequately test or quarantine newly-arrived prisoners who were transferred to USP Thomson from other facilities. (*See* SAC ¶ 54.) That is the same type of failure that the Ninth Circuit found sufficient to overcome PREP Act immunity in *Hampton*, a case arising from a mass COVID outbreak that occurred at California's San Quentin State Prison after the state's prison system transferred 122 prisoners there without properly testing or quarantining them. *Hampton*, 83 F.4th at 759–60. Defendant tries to distinguish *Hampton* in its reply brief as involving a "case of complete nonfeasance" (Def.'s Reply at 2), but this argument goes to the merits: without further discovery, the court cannot summarily conclude that USP Thomson's transfer procedures during the pandemic (or their health consequences) were meaningfully different from San Quentin's.

So too with Plaintiff's assertions that the prison's staff failed to adequately wear PPE, isolate symptomatic prisoners, or sanitize surfaces in order to prevent the spread of infection. As the Seventh Circuit held in *Martin*, a case concerning a nursing home's failure to take similar preventative measures:

> [Plaintiff] contends, for example, that the nursing home had too few nurses, permitted nurses to work when they were sick, and failed to isolate residents who showed signs of infection. None of these has anything to do with a "covered countermeasure." Face masks and other personal protective equipment are among the countermeasures defined by the Secretary, but [Plaintiff] does not allege that face masks led to her mother's death; instead she alleges that the nursing home *failed to use masks* and other protective equipment. This is the opposite of a contention that a covered countermeasure caused harm.

*Martin*, 37 F.4th at 1213–14 (emphasis in original). The *Martin* court observed that the Act's central purpose is to shield individuals from liability for administering (or making prioritization decisions in administering) vaccines and other treatments. *Id.* at 1214; *see also Maney*, 91 F.4th at 1298. But Plaintiff's complaint makes no mention of vaccines; its focus is on USP Thomson staff's inadequate quarantining and sanitary practices. *See Hampton*, 83 F.4th at 763 ("[F]or a

countermeasure with limited availability, administering the countermeasure to one person could mean withholding it from another. But that is not what Plaintiff alleges happened here.").[1]

It is possible to read some of Plaintiff's allegations as concerning improper use, rather than nonuse, of COVID treatments and protective supplies. He alleges, for instance, that prison officials and nurses "failed to adequately wear appropriate PPE." (SAC ¶ 59; *see id.* ¶ 70.) Perhaps this means that USP Thomson personnel had PPE, but used it improperly (such as an officer wearing an N95 mask on his mouth alone rather than his mouth and nose). Such an allegation might "relate[] to" the "use by an individual of a covered countermeasure," thus precluding liability under the Act. *See Parker v. St. Jude Operating Co., LLC*, No. 3:20-CV-01325-HZ, 2020 WL 8362407, at *5 (D. Or. Dec. 28, 2020) (acknowledging that claims based on "the misuse of PPE" might be precluded by the PREP Act). For now, however, the court draws all inferences in Plaintiff's favor. As "it is unclear from the face of the complaint whether he alleges *mis*use [rather than *non*use] of covered countermeasures," the court will not dismiss his claims in whole or in part on this basis. *Id.* at *2 (emphasis added).

## II. Federal Law Enforcement Officer Immunity

As a second basis for dismissal, Defendant invokes an Illinois statute that shields federal law enforcement officers from liability for tort claims. Because Plaintiff's FTCA claim hinges on the existence of a parallel state-law claim against "a private individual under like circumstances," 28 U.S.C. § 2674, "[t]he United States can assert any substantive limitation on liability under that state's law that a private person could assert in the same circumstances," *Ludwig v. United States*, 21 F.4th 929, 931 (7th Cir. 2021). The one at issue here, the Illinois Federal Law Enforcement

---

[1] For this reason, Defendant's citation to the Ninth Circuit's decision in *Maney v. Brown*, 91 F.4th 1296 (9th Cir. 2024), is inapposite. *Maney* recognized PREP Act immunity for a prison's decision to prioritize vaccinating staff over prisoners, a scenario that the Secretary had specifically described as covered in subsequently published guidance. *Id.* at 1301–02; *see Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration*, 85 Fed. Reg. 79190, 79,197 (Dec. 9, 2020) (amending PREP Act declaration to include "[p]rioritization or purposeful allocation" of a scarce covered countermeasure).

Officer Immunity Act, provides that "[a] federal law enforcement officer while acting as a peace

officer under Section 2-13 of the Criminal Code of 2012 is not liable for his or her act or omission

in the execution or enforcement of any law unless the act or omission constitutes wilful and wanton

conduct." 745 ILCS 22/10. "[P]eace officer," in turn, is defined as

> (i) any person who by virtue of his office or public employment is vested by law
> with a duty to maintain public order or to make arrests for offenses, whether that
> duty extends to all offenses or is limited to specific offenses, or (ii) any person who,
> by statute, is granted and authorized to exercise powers similar to those conferred
> upon any peace officer employed by a law enforcement agency of this State.

720 ILCS 5/2-13. Because all Bureau of Prisons employees (including nurses) are authorized to

make arrests on prison premises, Defendant argues, they necessarily fall within the Act's purview.

*See* 18 U.S.C. § 3050; *McIntosh v. United States*, No. 19 C 50322, 2022 WL 1092142, at *8 (N.D.

Ill. Apr. 12, 2022) (holding that USP Thomson officers' conduct "comes within the purview of

Section 22/10"). And because Plaintiff is alleging only that prison staff were negligent—not

willfully or wantonly malicious—in their administration of COVID countermeasures, Defendant

reasons, his claims fail.

The court agrees that, as currently written, Plaintiff's allegations do not clearly assert

"gross" or "willful and wanton" negligence.[2] But that makes no difference in this case; Section

22/10 is not clearly applicable here. It only immunizes federal law enforcement officers who are

"*acting as* a peace officer . . . in the *execution or enforcement of any law*." 745 ILCS 22/10

(emphasis added). The Act separately defines "federal law enforcement officer" as "any officer,

agent, or employee of the federal government commissioned by federal statute to make arrests

---

[2] The Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. This maps onto the general definition of "gross negligence" or "willful and wanton conduct" as an "aggravated form of negligence" under Illinois law. *Smith v. United States*, 684 F. Supp. 3d 755, 759 (N.D. Ill. 2023) (citing *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 2012 IL 112479, ¶ 19, 973 N.E. 2d 880, 887). Plaintiff here makes no more than generalized allegations about the prison staff's overall failure to take adequate COVID safety measures—there is no suggestion that any staff member deliberately intended to harm him or acted with conscious disregard for his medical needs.

for violations of federal criminal laws," and includes a nonexhaustive list of covered "criminal investigators" that includes personnel from agencies such as the FBI, DOJ, and U.S. Marshals Service—but not the Bureau of Prisons. 745 ILCS 22/5. Even if Bureau employees do fall within the statute's catchall category by virtue of their authority to make arrests on BOP premises, these textual provisions suggest that the Act's central purpose is limited to protecting conduct that actually arises from "law enforcement" duties, such as making these arrests or otherwise maintaining order through disciplinary action. *Id.*

The admittedly scant caselaw available on Section 22/10 supports this conclusion. This court's own research has turned up only two previous FTCA cases interpreting the Act in the prison context, and both involved tort claims arising from the enforcement of prison regulations against individual inmates. *See McIntosh*, 2022 WL 1092142, at *8 (finding statute applicable where corrections officers acted in accordance with prison regulations authorizing use of force to restrain inmates); *Smith*, 684 F. Supp. 3d at 758–59 (finding statute applicable where prison officials accidentally slammed door on plaintiffs' finger in attempting to "prevent [him] from compromising the food slot," which—if successful—would result in a rule violation).

Here, in contrast, the conduct at issue—administering USP Thomson's COVID response through measures like testing and sanitization—is far removed from what the statute is designed to protect. Defendant has identified no mandatory "law" that the prison's corrections officers and nurses were "enforc[ing]" or "execut[ing]" in taking (or failing to take) these actions; while it is arguable that the Bureau's COVID guidance memos could qualify, any such argument is at odds with the government's apparent position that this guidance falls within the FTCA's "discretionary function exemption," 28 U.S.C. § 2680(a), discussed below.[3] Even if federal prison officials are entitled to immunity under Illinois law when making arrests or taking disciplinary actions, the court declines to expand this protection to all acts that have nothing to do with the exercise of this

---

[3]        *See infra* Section IV.

authority. Accordingly, the Illinois Federal Law Enforcement Officer Immunity Act does not provide a basis to dismiss Plaintiff's negligence claims.

## III. Institutional Liability

Defendant's third argument for dismissal is that Plaintiff's claim depends upon a theory of "institutional liability" that is not cognizable under the FTCA in these circumstances. Recall that the FTCA is a waiver of the United States' sovereign immunity for torts of its employees acting "within the scope of [their] office or employment" only to the extent that "a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see id.* § 2674. In other words, the FTCA only renders the United States indirectly liable for its employees' tortious conduct under state law, not directly liable for its own acts or omissions. *See Lee v. United States*, No. CV1908051PCTDLRDMF, 2020 WL 6573258, at *5 (D. Ariz. Sept. 18, 2020).

In Defendant's view, the thrust of Plaintiff's case is not to hold the United States liable for any one individual's breach of duty, but for USP Thomson's systemic failure to adequately supervise its employees' implementation of COVID protections during the pandemic. Any such negligent-supervision claim, Defendant argues, would fail under Illinois's Tort Immunity Act, which immunizes "local public entit[ies]" and "public employee[s]" for the "failure to provide sufficient equipment, personnel, supervision or facilities" in operating a correctional facility. 745 ILCS 10/4-103. Thus, without a viable "private-person analogue" available to Plaintiff under Illinois state law, Defendant argues that his FTCA claim must fail.

As an initial matter, whether the United States can even invoke the Tort Immunity Act at all in an FTCA suit remains undecided in this circuit. *See Dernis*, 2023 WL 4564591, at *9 (noting that the Seventh Circuit has "expressly declined to reach th[is] question") (citing *Kaniff v. United States*, 351 F.3d 780, 790 (7th Cir. 2003)). There are strong arguments to the contrary: the Tort Immunity Act protects "*local* public entities" and their employees in Illinois, 745 ILCS 10/1-101.1 (emphasis added); *see id.* 10/1-206, -207, /4-101, and a federal employee would not necessarily

11

be entitled to claim this same protection. (*See* Mem. Op. and Order [126] at 6, *Doe v. United States*, No. 22 C 50128 (N.D. Ill. Aug. 2, 2024) ("[N]othing in the FTCA indicates that state local government tort immunity acts are available to the United States to defeat claims against it[.]") (quoting *Est. of Belbachir v. United States*, No. 08 C 50193, 2009 WL 10857053, at *3 (N.D. Ill. May 21, 2009))). *But see Fowler v. United States*, No. 08 C 02785, 2014 WL 683751, at *8 (N.D. Ill. Feb. 21, 2014) (asserting that "the common practice in this circuit seems to be for courts to apply the Tort Immunity Act to the United States in FTCA actions because it is a public entity, albeit not a 'local' one").

The court need not reach this question, however, as Plaintiff's lawsuit does not appear to rest on a theory of negligent supervision. While certain paragraphs in the Complaint could be read to invoke this theory (*e.g.*, SAC ¶ 122(b) ("Negligently and/or recklessly failed to recognize USP Thomson Officers and USP Medical Staff conduct described herein as creating an undue risk of harm, illness, and/or injury")), the bulk of the Complaint is not devoted to similar allegations. Rather, Plaintiff identifies "yet unknown prison officials and guards," as well as specifically named medical staff, who—he alleges—are *individually* responsible for negligence in their failure to follow the Bureau's COVID protocols, making the United States vicariously liable in their stead under the FTCA. (SAC ¶¶ 52–53.)

Defendant nonetheless argues that Plaintiff's claim is contrary to the purpose of the FTCA because it "fails to plead the alleged negligence in a way that is specific to individual officers, as opposed to Thomson as an institution." (Mem. Op. and Order at 5, *Doe*, No. 22 C 50128). This argument has merit, but the court concludes Plaintiff's complaint survives the challenge at this stage. True, Plaintiff has failed to identify the individuals directly responsible for his COVID infections, or to describe specific incidents when he was exposed. *See Lee*, 2020 WL 6573258, at *5–6; *cf. Pressley v. United States*, No. 2:21-CV-00202-JMS-MG, 2023 WL 22192, at *4 (S.D. Ind. Jan. 3, 2023) (identifying specific incident in which prison staff reported to work while ill with COVID). Although this "does raise questions as to the strength of his claim," Plaintiff is not

12

required at the pleading stage to "specifically state the names of the correctional staff" who were allegedly responsible for his injuries "if the allegations in the complaint allow for the specific persons to be subsequently identified with reasonable certainty." *Smith-Bey v. Hosp. Adm'r*, 841 F.2d 751 (7th Cir. 1988); *see also Jordan v. United States*, No. 18-CV-01100-JPG, 2018 WL 5024054, at *2 (S.D. Ill. Oct. 17, 2018) (allowing FTCA claim to proceed "based on the allegedly negligent conduct of the 2014 BOP Director and/or Unknown Staff at USP-Marion"); *Thieme v. United States*, No. CV 21-682 (RMB-AMD), 2023 WL 2584102, at *6 (D.N.J. Mar. 21, 2023) (noting, in COVID prison negligence case, that "Plaintiff is not required to plead that the individual defendants were negligent, but only that any employee of the Government was negligent while acting within the scope of his office or employment," and "[t]herefore, allegations that 'Defendants or their agents' were negligent are sufficient"). Accordingly, the court will not dismiss Plaintiff's claims as noncognizable under the FTCA, but cautions that he is expected to perform prompt discovery to identify individual officers responsible for his injuries.

## IV.    FTCA Quarantine Exemption

The United States' final argument for dismissal of Plaintiff's claim is that it is barred by the FTCA's "quarantine exemption." The FTCA's limited waiver of sovereign immunity is itself subject to certain statutorily-defined exemptions, as laid out in 28 U.S.C. § 2860. One of these precludes "[a]ny claim for damages caused by the imposition or establishment of a quarantine by the United States." 28 U.S.C. § 2860(f). Defendant argues that this exemption applies to all of Plaintiff's claims to the extent they arise from the Bureau's imposition of quarantine measures at USP Thomson.

Whether the FTCA's "quarantine exemption" applies to COVID-related tort claims remains unsettled. Some district courts have interpreted the language of Section 2860(f) to encompass the events of the pandemic. *E.g.*, *Wallace v. Dep't of Just.*, No. 5:21-CT-3035-D, 2021 WL 2853692 (E.D.N.C. June 24, 2021), *aff'd*, No. 21-7017, 2022 WL 1024613 (4th Cir. Apr. 6, 2022) (unpublished per curiam opinion). Others have construed it more narrowly, noting that it has

generally only been applied to date in the context of livestock quarantines. *Pressley*, 2023 WL 22192, at *4 (citing *Cascabel Cattle Co., L.L.C. v. United States*, 955 F.3d 445 (5th Cir. 2020), and *Rey v. United States*, 484 F.2d 45, 46–48 (5th Cir. 1973)); *Ates v. United States*, No. 2:21-CV-00418-JPH-MG, 2023 WL 1765991, at *5 (S.D. Ind. Feb. 2, 2023). The Seventh Circuit has yet to weigh in on this question. *Pressley*, 2023 WL 22192, at *4.

This court need not weigh in on this issue, either. The FTCA's exemptions are affirmative defenses that cannot justify dismissal at this stage unless Plaintiff's complaint sets forth everything needed to satisfy the defense. *Id*. Although other circuits treat the FTCA's exemptions as jurisdictional, *e.g.*, *Campos v. United States*, 888 F.3d 724 (5th Cir. 2018), the Seventh Circuit continues to regard them as nonjurisdictional claims-processing rules that the government must prove as affirmative defenses, *see Dernis*, 2023 WL 4564591, at *7, *10 (citing *Parrott*, 536 F.3d at 634). Here, even assuming the Government is correct that claims arising from a COVID-related quarantine could be barred by this statute, Plaintiff's claim survives. The statute precludes claims "*caused by* the *imposition or establishment* of a quarantine by the United States." 28 U.S.C. § 2860(f) (emphasis added). But Plaintiff is not alleging harm arising from "imposition or establishment" of a quarantine. He is alleging that he was harmed by prison officials' alleged *failure* to effectively impose or establish a quarantine. The Government's reading thus runs into the same difficulty that undermines its interpretation of the PREP Act.

One final caveat: The FTCA's first statutory exemption carves out claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2860(a). Some district courts have found that the Bureau's COVID protocols—as well as related public health guidance published by the DOJ, CDC, and other official bodies—were purely advisory, and thus

subject to the FTCA's "discretionary-function exemption."[4]  Many of these cases, like Plaintiff's, were founded on generalized allegations of negligence over unnamed prison officials' failure to follow the recommendations and procedures set forth in this guidance.  *See, e.g.*, *Sanford v. United States*, No. CV 0:21-2552-RMG, 2022 WL 1210717, at *1, *3 (D.S.C. Apr. 25, 2022) (allegations that plaintiff contracted COVID after prison officials "abandoned the preventative guidelines by, inter alia, failing to test officers outside the facility and allowing inmates who tested positive into the facility or to pass meal trays").

The court is not inclined to apply this discretionary-function exemption sua sponte, however, as it is not properly presented at this stage.  As noted, the FTCA's exemptions are treated in this circuit as affirmative defenses that the government must plead and prove.  *Dernis*, 2023 WL 4564591, at *7, *10 (citing *Parrott*, 536 F.3d at 634).  Defendant in this case has raised the discretionary-function exemption as a defense in its answer to Plaintiff's original Complaint (*see* [12] at 2) and has signaled in its current motion to dismiss that it intends to invoke the exemption in a later motion for summary judgment (*see* Mot. at 13 n.4), but it has not raised it as a basis for dismissal in the instant motion.  Nor could it do so: since neither party has actually produced copies of the Bureau's guidance cited in Plaintiff's complaint, the court lacks a sufficient evidentiary record to determine whether it is in fact mandatory.  *See Sanford*, 2022 WL 1210717, at *3 ("At this stage in the proceeding, the Court finds that a more robust record of fact is warranted in order to determine whether the FTCA's discretionary function exception may apply to [prison] officials' alleged failure to follow or implement these or other BOP Covid-19 response plans."); *Thieme*, 2023 WL 2584102, at *7 (finding that "some of the alleged acts of negligence in the [complaint] are based on mandatory pandemic procedures, while others are not," and requesting supplemental briefing to determine extent of discretionary function exception's applicability).  That

---

[4]      *See, e.g.*, *Head v. United States*, No. 22 C 238, 2024 WL 520037, at *20–27 (D. Md. Feb. 9, 2024); *Murillo v. Dep't of Just.*, No. 21 C 425, 2022 WL 16745333, at *16–25 (D. Ariz. Nov. 4, 2022); *Sanford v. United States*, No. 21 C 2552, 2022 WL 17750754, at *5–10 (D. S.C. Oct. 18, 2022).

question is for another day; in the meantime, the Government's argument for dismissal based on the FTCA's quarantine exemption is denied.

## **CONCLUSION**

Defendant's motion to dismiss Plaintiff's Second Amended Complaint [43] is denied.

ENTER:

Dated:  August 30, 2024

_____
REBECCA R. PALLMEYER
United States District Judge